**MIDWESTERN GAS TRANSMISSION COMPANY, Petitioner,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent,**

**Northern Indiana Public Service Company, Intervenor.**

No. 83–1028.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 12, 1983.

Decided May 11, 1984.

Michael J. McDanold, Washington, D.C. with whom Dale A. Wright and Terence J. Collins, Washington, D.C., were on the brief, for petitioner.

Robert F. Shapiro, Attorney, Federal Energy Regulatory Commission, Washington, D.C., with whom Stephen R. Melton, Acting General Counsel, and Barbara J. Weller, Deputy Solicitor, Federal Energy Regulatory Commission, Washington, D.C., were on the brief, for respondent.

Peter L. Hatton, Washington, D.C., entered an appearance for intervenor.

Before WALD, EDWARDS and BORK, Circuit Judges.

Opinion for the Court filed by Circuit Judge BORK.

BORK, Circuit Judge:

Midwestern Gas Transmission Company petitions for review of orders issued by the Federal Energy Regulatory Commission. The Commission required Midwestern to credit revenues earned from performing short-term transportation services to its unrecovered purchased gas cost account. The effect of that crediting is to reduce Midwestern's rates.

The dispute turns upon the interpretation and legality of a Commission regulation. Only two of Midwestern's arguments need be addressed. The first is that the Commission has misread the crucial exception to its crediting regulation and has done so in a way that renders the exception meaningless. The second is that the regulation, so read, violates this court's holding in *Panhandle Eastern Pipe Line Co. v. FERC*, 613 F.2d 1120 (D.C.Cir.1979). We reject the first contention because we think the Commission has correctly read its regulation. We do not reach the *Panhandle* issue because Midwestern waived its opportunity to raise this challenge. We therefore affirm the challenged orders.

## I.

Midwestern is a natural gas pipeline company within the meaning of the Natural Gas Act and is subject to the jurisdiction of the Commission. It is engaged in purchasing, transporting, and selling natural gas in interstate commerce. The issues to be decided will be clarified by a brief description of the regulatory framework.

Section 7(c) of the Natural Gas Act, 15 U.S.C. § 717f(c) (1982), provides that a natural gas company must obtain a certificate of public convenience and necessity prior to engaging in the interstate sale or transportation of gas. Section 7(e) states that the Commission may "attach ... such reasonable terms and conditions as the public convenience and necessity may require." One of the conditions attached to each certificate is the rate to be charged for the service. Rates may be changed either by the Commission or by the pipeline. Under section 4 of the Act, 15 U.S.C. § 717c (1982), the company may make a new filing to increase its rates. The Commission may modify the rate filed in the section 4 proceeding itself or may initiate a modification to an existing rate by proceeding under section 5, 15 U.S.C. § 717d (1982).

These procedures are somewhat cumbersome, and, in an effort to facilitate short-term transportation services by interstate pipelines on behalf of other interstate pipelines, the Commission devised a self-implementing blanket certificate procedure that avoids much of the burden of the ordinary section 7 proceeding. A condition of using this procedure, however, is that the pipeline must credit all transportation service revenues, above one cent per MMBtu, to a deferred account, Account 191. Because of the nature of Account 191, the effect of crediting these revenues is to lower rates. The Commission permits gas companies to reflect increases in its costs in the rates charged customers under the purchased gas adjustment clause (PGA clause). The amounts to be recovered are placed in Account 191 and the company may file a rate adjustment based on the amounts in that account every six months. Revenues cred-

ited to Account 191 offset the amount of the increased costs in that account and thus lessen the rate increases.

The blanket certificate procedure was created by the Commission's Order No. 60, 44 Fed.Reg. 68,821 (1979). The issue before us arises out of regulations issued pursuant to Order No. 60, specifically 18 C.F.R. § 284.103(d) (1983), which provides:

*Treatment of Revenues.* (1) Except as provided in paragraphs (d)(2) and (3) of this section, all revenues received for transportation authorized under § 284.-102(a) in excess of an allowance of one cent per MMBtu shall be credited to Account No. 191 and flowed back to the interstate pipeline's customers.

(2) An interstate pipeline is not required to credit revenues to Account No. 191 pursuant to paragraph (d)(1) of this section:

(i) To the extent revenues attributable to such services fall within representative levels which have been credited in arriving at a test period cost of service; or

(ii) To the extent that volumes transported fall within representative levels which have been included in billing determinants for the purpose of establishing rates.

The second exception is the focus of the controversy here.

Midwestern applied for a blanket certificate soon after the Commission issued its blanket certificate regulations. On February 21, 1980, the Commission authorized such a certificate for Midwestern on the condition that Midwestern accept the revenue crediting procedure established in Subpart B of 18 C.F.R. Part 284 (1983) of the Commission's regulations. On March 19, 1980, Midwestern accepted the certificate with the conditions.

On May 28, 1982, pursuant to section 4 of the Natural Gas Act, 15 U.S.C. § 717c, Midwestern filed purchased gas adjustment rate increases for its Northern and Southern systems. Prior to the PGA filing, Midwestern had recovered short-term transportation revenues for transporting gas on its Southern System; nevertheless, in its filing Midwestern did not credit those revenues to Account 191 for its Southern System customers. Midwestern claimed that such a credit would prevent it from recovering the full cost of service. In its filing Midwestern alleged that it fell within the second exception to the revenue crediting requirement. In the alternative, Midwestern requested a waiver of the regulation, claiming the revenue credit was unlawful under *Panhandle.*

On July 1, 1982, the Commission issued the first of the orders here under review and rejected Midwestern's interpretation of the relevant regulation and its reliance upon *Panhandle.* With respect to the interpretation of the exception, Midwestern had claimed that it satisfied the exception because its sales volumes fell below the level underlying its currently effective rates and that the decline in sales volumes would more than offset the amount of the credit. The Commission responded that the exception applied not to sales but to transportation volumes. Moreover, the Commission noted that the appropriate levels of billing determinants and sales volumes in Midwestern's current rate case had not yet been determined; therefore, a possibility still existed that Midwestern would recover its cost of service. In rejecting Midwestern's claim that the revenue credit was unlawful under *Panhandle,* the Commission found Midwestern's contention to be an improper collateral attack on a condition to a certificate that it had accepted without protest.

On July 30, 1982, Midwestern applied for a rehearing of the Commission's July 1 order, alleging that the Commission's interpretation of the exception to its revenue-crediting requirement rendered the exception a nullity. In an order of November 24, 1982, the Commission denied the application for rehearing and repeated its earlier statement that the required revenue crediting flowed directly from Midwestern's certificate.

## II.

Midwestern contends that the purpose of exception (ii) and the regulation generally is to prevent double recovery of costs on the system as a whole. Given this purpose, Midwestern argues, it would be unreasonable to interpret the exception as applying only to volumes involved in short-term transportation arrangements. The exception must be read to apply to all volumes transported on the system. Thus, Midwestern argues, the Commission's reading of the exception is irrational.

■ We reject Midwestern's argument for two reasons, one relating to the rationale of exception (ii) and the other to the regulation's text. The latter point alone is dispositive. The regulation quoted applies to "all revenues received for transportation authorized under § 284.102(a)." This latter section authorizes only short-term transportation, *i.e.*, an arrangement for transportation that does not exceed a period of two years. The exceptions, then, are to a crediting requirement for short-term transportation. It would be extraordinary if the exceptions applied to anything other than the requirement to which they are exceptions. It is not usual to write exceptions that are broader than the rule. Indeed, exception (i) explicitly refers to short-term transportation in the words "such services." No careful lawyer ought to suppose that exception (ii), without any words to suggest such an idea, applies to transportation revenues that none of the rest of the regulation, including exception (i), is concerned with.

■ The argument from the rationale of exception (ii) is no more persuasive. The purpose of the requirement that transportation revenues be credited to Account 191 is to prevent double recovery. The pipeline is paid for its transportation costs by its system supply customers. Collecting additional revenues for transportation would be a double recovery. Exception (ii) relieves the pipeline of the crediting requirement if, in effect, the volumes transported have already been taken into account in establishing rates. If such revenues had to be

credited to Account 191, they would be used to lower rates twice, a clearly improper result. Midwestern's contention appears to be that the exception should apply to all transportation on the system or it may be unable to recover its cost of service. The limitation to short-term transportation revenues is not irrational, however. The fairness of rates overall may be addressed by periodic section 4 proceedings initiated by the pipeline. Midwestern can come in under section 4(e) if it needs a rate change to cover costs other than those relating to short-term transportation. The regulation and exception at issue here address only the situation created by the blanket certificate and the PGA clause procedures that makes easier the provision of short-term transportation and the rapid recovery of increased costs.

■ Midwestern also argues that the Commission's interpretation renders the revenue-crediting exception a "nullity" since its conditions "will likely never be met" (Brief for Petitioner at 15). This argument rests on the mistaken assumption that the Commission's regulations preclude inclusion of short-term transportation services in a pipeline's rate filing. According to petitioner, it would be "exceedingly difficult" to make a representative estimate of the billing determinants and revenues from these services. *Id.* However, the non-recurring nature of a particular short-term transportation service does not prevent a pipeline from including this item in its rate filing, for the pipeline can predict with reasonable accuracy the level of transportation service it anticipates providing annually for all customers.

■ Petitioner's last contention is that the Commission's requirement that revenues derived from short-term transportation be credited to the purchased gas account is illegal under this court's ruling in *Panhandle* that Account 191 could receive only costs and not revenues. We need not reach the question of *Panhandle*'s application here because of the procedural infirmity in Midwestern's position. The opinion in

*Panhandle* issued three months before Midwestern expressly accepted its blanket certificate containing the revenue-crediting condition. At that time Midwestern could have preserved its right to challenge the regulations by requesting that the Commission reconsider its decision in view of the holding in *Panhandle.* Under section 19(b) of the Natural Gas Act, 15 U.S.C. § 717r(b) (1982), a party may seek reconsideration of a Commission order within thirty days of the order's issuance and may seek judicial review of a denial of reconsideration within sixty days of a denial. Midwestern did nothing. It now seeks to avoid the jurisdictional bar by claiming it is the Commission's unexpected interpretation of the certificate condition, not the condition itself, that is illegal. Consequently, in Midwestern's view, it retained a right of appeal until the Commission made its interpretation in its July 1 order.

Our conclusion above, that the regulation is clear and the Commission's reading of it correct, is fatal to Midwestern's argument. This case thus presents a different situation from those the court confronted in *Kansas Cities v. FERC,* 723 F.2d 82 (D.C. Cir.1983), and *Cities of Batavia, Naperville, etc. v. FERC,* 672 F.2d 64 (D.C.Cir. 1982). In *Kansas Cities* there was "considerable doubt whether the [plaintiffs] were persons 'aggrieved' by the earlier order and were therefore entitled to seek rehearing and review at that time," 723 F.2d at 86 (footnote and citations omitted); here there was no doubt that Midwestern was aggrieved at the time it accepted the certificate with conditions. In *Cities of Batavia* the court commented that issues that might have been, but were not, raised in a petition from an agency order are not necessarily lost on a subsequent petition from another order where

> some of the issues that might have been raised in that appeal are so inextricably linked to a subsequent agency opinion on another aspect of the same case, that those issues may be raised in a timely appeal from the second opinion.

672 F.2d at 72 n. 15 (dictum). In the present case, we have, however, not a dif-

ferent order with some overlap of issues but, in effect, the same order. We hold, therefore, that when Midwestern accepted without challenge its certificate containing the revenue-crediting condition, it waived its opportunity to challenge the condition later.

*Affirmed.*