## KENTUCKY UTILITIES COMPANY, Petitioner,

v.

## The UNITED STATES FEDERAL ENERGY REGULATORY COMMISSION, Respondent,

the Cities of Barbourville, Bardstown, Benham, Corbin, Falmouth, Madisonville and Providence, Kentucky, the Electric and Water Plant Board of Frankfort, Kentucky, and Berea College in Berea, Kentucky, Intervenors-Respondents.

No. 85–3065.

United States Court of Appeals, Sixth Circuit.

Argued March 3, 1986.

Decided May 2, 1986.

Rehearing and Rehearing En Banc Denied June 25, 1986.

John N. Estes, III argued, Solicitor's Office, F.E.R.C., Washington, D.C., for respondent.

Before MILBURN and RYAN, Circuit Judges, and WILHOIT, District Judge.*

MILBURN, Circuit Judge.

The Kentucky Utilities Company ("Kentucky Utilities") petitions this court, pursuant to section 313(b) of the Federal Power Act ("the Act"), 16 U.S.C. § 825l(b), to review an order of the Federal Energy Regulatory Commission ("the Commission"). Kentucky Utilities submitted for filing with the Commission a revised contract and rate schedule to govern wholesale sales of electricity to intervenors in purported compliance with two previous Commission orders. The Commission determined that Kentucky Utilities' "compliance filing" did not comport with its two prior orders in four significant respects and modified the filing accordingly. The Commission's previous orders were issued more than sixty days prior to the filing of this petition for review and have been fully reviewed by this court in a prior decision. *See Kentucky Utilities Co. v. F.E.R.C.*, 766 F.2d 239 (6th Cir.1985) (*"Kentucky Utilities I"*). Because we find that the issues raised by Kentucky Utilities in this appeal were or should have been raised in its prior appeal to this court, Kentucky Utilities' petition for review is an untimely collateral attack on prior Commission orders which we do not have jurisdiction to entertain.

## I.

Kentucky Utilities is an electric utility whose wholesale rates and terms and conditions of service are subject to review by the Commission under section 205 of the Act, 16 U.S.C. § 824d. Intervenors, the Kentucky municipalities of Barbourville, Bardstown, Benham, Corbin, Falmouth, Madisonville, and Providence, the Electric and Water Plant Board of Frankfort, and

---

Garrison R. Cox, Malcolm Y. Marshall argued, Louisville, Ky., for petitioner.

* The Honorable Henry R. Wilhoit, Jr., Judge, United States District Court for the Eastern District of Kentucky, sitting by designation.

Berea College (Berea, Ky.), each purchase electricity from Kentucky Utilities and distribute it to their residents. Kentucky Utilities may change the rates, terms and conditions under which it supplies power to intervenors only in accordance with section 205 of the Act, 16 U.S.C. § 824d, which requires changes to be submitted for Commission approval before they can become effective.

The present dispute began in May 1978 when Kentucky Utilities filed with the Commission new, proposed rates and terms and conditions of service to supplant its existing contracts with intervenors. The Commission ordered a hearing and granted intervenors' request for intervention. Intervenors objected to the notice and cancellation provisions of the proposed contract that would have required wholesale customers to give five years notice in order to terminate service, an increase from the three-year notice provision in the existing contracts. Intervenors also objected to the availability clause of the proposed rate schedule that would have limited the availability of the proposed rate to customers "purchasing all of their requirements of electricity" from Kentucky Utilities.

Following an evidentiary hearing, an administrative law judge concluded that Kentucky Utilities had justified the increase in the notice period from three to five years, but approved a three-year notice provision for customers with peak demands of less than 25 MW. *Kentucky Utilities Co.*, 10 F.E.R.C. ¶ 63,057, ___ (1980). The ALJ next limited the total amount of load Kentucky Utilities could lose in a three-year period to 25 MW. He did this by providing that if the cumulative notice or load losses in any two-year period equaled or exceeded 25 MW, the remaining customers could not cancel their contracts except on five years notice. 10 F.E.R.C. at ___. Finally, the ALJ approved the availability clause as proposed by Kentucky Utilities stating, "The tariff involved in this proceeding does not provide for partial requirements service, and it is the reasonableness of this tariff that must be considered." 10 F.E. R.C. at ___.

Upon review, the Commission removed the prohibitions on further cancellations once Kentucky Utilities received in a single two-year period notices of terminations aggregating 25 MW. *Kentucky Utilities Co.*, 23 F.E.R.C. ¶ 61,317, ___ (1983) ("Opinion No. 169"). The Commission also provided that any intervenor could partially terminate its purchases from Kentucky Utilities, up to 25 MW, upon three years notification, stating:

> The [intervenors] argue that each customer should be allowed to give notice of cancellation for a part of its load. We agree.... The loss of a 10 MW load has the same impact on Kentucky [Utilities] whether it comprises all or only part of the customer's requirements.

.     .     .     .     .

Based on our holdings the term and notice period we find reasonable is:

> TERM: The company agrees to provide, and the customer agrees to take, service pursuant to the applicable rate schedule until the agreement is cancelled by either party giving written notice five years in advance. However, for loads of 25 MW or less, whether for all or part of the customer's requirements, the agreement may be cancelled by either party giving written notice three years in advance.

23 F.E.R.C. at 61,673, 61,677. The Commission also prescribed specific language concerning the obligations of Kentucky Utilities and the customer after the customer gives notice of partial termination:

> To be effective a notice of cancellation must contain a specification of the source of supply, the date on which the source of supply will be available, and an affidavit from the supplier that it will supply the customer on the date the contract ends.
>
> The rate for service after the effective date of cancellation shall be the rate specified herein or any superceding rate properly filed with the ... Commission.

23 F.E.R.C. at ___.

The Commission further determined that because the existing contracts did not re-

quire customers to purchase their full requirements from Kentucky Utilities, the proposal to restrict the availability of the proposed rate to full requirements customers was a change in service. The Commission stated:

> [W]e find that the service offered in the existing contracts was not restricted to customers purchasing their full requirements from Kentucky [Utilities]. Because the availability clause in the proposed contracts would restrict the service offered to customers purchasing their full requirements, the proposed restriction on availability is a change in service.

23 F.E.R.C. at ___. The Commission found that Kentucky Utilities had not justified the proposed change in service and ordered it deleted from the availability clause. 23 F.E.R.C. at ___.

On rehearing, the Commission reinstated the aggregate limit of 25 MW termination on three years notice within any consecutive two-year period. *Kentucky Utilities Co.*, 25 F.E.R.C. ¶ 61,205, ___ (1983) ("Opinion No. 169–A"). However, the Commission refused to alter its prior holding with respect to the proposed full requirements limitation. The Commission rejected Kentucky Utilities' argument that the proposed rate was appropriate only for full requirements customers, finding that nothing in the record precluded the possibility that the rate was appropriate for customers purchasing less than their full requirements from Kentucky Utilities. 25 F.E.R.C. at ___. The Commission also rejected Kentucky Utilities' argument that Opinion No. 169 directed Kentucky Utilities to make the proposed rate available to partial requirements service, stating:

> We neither decided nor implied that the [proposed] rate should be made available for any partial requirements service. The question was not before us. None of the customers has ever received any service but full requirements. Nor do any of the customers have pending a request for any other kind of service. If, however, a customer makes such a request, the question will be before us....

Nothing we held in Opinion No. 169 relieves the customer of the necessity of showing that the particular service requested is consistent with the existing contracts or that the [proposed] rate, or any superseding rate, appropriately reflects the costs of providing the service requested. In short, all we held in Opinion No. 169 was that Kentucky [Utilities] should not be allowed to foreclose that question now by imposing a clause that would limit the availability of the [proposed] rate to full requirements service. 25 F.E.R.C. at ___. Finally, the Commission agreed with Kentucky Utilities that it erred in striking the proposed availability clause without specifying the appropriate availability clause and ordered Kentucky Utilities to continue its previous availability clause "By contract." 25 F.E.R.C. at ___.

On appeal, we affirmed that part of the Commission's decisions permitting intervenors to partially terminate their obligation to purchase electricity from Kentucky Utilities, finding that the provision was "a legitimate pragmatic adjustment called for by the particular circumstances of the case...." *Kentucky Utilities I*, 766 F.2d at 248–49. We rejected Kentucky Utilities' argument that partial termination was an "engineering impossibility" because there was no evidence in the record that intervenors were incapable of receiving partial service and because the argument was not enunciated in the petition for rehearing. However, we reversed that part of the Commission's decisions setting the period of notice for any termination at three years, finding that "[t]he only relevant evidence established that at least a five-year period was necessary." 766 F.2d at 250. We remanded with instructions for the Commission to amend its orders in a manner consistent with our opinion. *Id.*

Prior to this court's decision in *Kentucky Utilities I*, Kentucky Utilities filed with the Commission a revised contract and rate schedule purporting to comply with Opinions Nos. 169 and 169–A. Following receipt of intervenors' comments, the Com-

mission issued an order holding that Kentucky Utilities' filing did not comply with the Commission's previous decisions and modified the utility's filing accordingly. *Kentucky Utilities Co.*, 29 F.E.R.C. ¶ 61,-225 (1984) ("the compliance order"). The Commission found at the outset that Kentucky Utilities was, through its compliance filing, attempting to reargue the merits of issues resolved in Opinions Nos. 169 and 169–A. 29 F.E.R.C. at ___.

Turning to the specific problems with the filing, the Commission noted that it had previously mandated the only language appropriate in the availability clause of the rate schedule was "By contract," the language in Kentucky Utilities' previous rate schedule. Thus, the Commission deleted additional phrases inserted by Kentucky Utilities which, according to the Commission, would have limited the availability of the rate to full requirements customers. 29 F.E.R.C. at ___. The language deleted provided:

> Available on written contract, upon all terms and conditions stated herein, in such Contract and in Company's Rules, Regulations, Terms and Conditions applicable to the service hereunder to Municipals and Berea College operating wholesale for retail resale electric distribution systems. (Note: In Federal Energy Regulatory Commission Docket No. ER78–417, the FERC held the within rate to be appropriate for full requirements service; such service is the only service for which the FERC has held such rate to be appropriate.)

The Commission also deleted from the availability clause of the revised contract language which would have required customers to purchase "all of their requirements of electricity" from Kentucky Utilities. The Commission found the proposed language inconsistent with its previous holding that Kentucky Utilities would not be permitted to foreclose the possibility of partial requirements service by restricting the availability of the rate to full requirements service. *Id.*

The Commission next noted that its prior decisions allowed customers of Kentucky Utilities to give notice of termination of part of their load. Thus, the Commission deleted from the revised contract language which would have given Kentucky Utilities the option of cancelling the entire contract of a customer giving notice of partial termination. 29 F.E.R.C. at ___. The Commission also deleted from the revised contract and rate schedule language relieving Kentucky Utilities of any obligation to make additions to its facilities for service to the customer after the effective date of the customer's termination. The additional language provided:

> If Customer gives Company notice of cancellation, Company shall have no obligation to make or complete any additions to or changes in any facilities for the provision of service to Customer after the effective date of Customer's cancellation, unless Customer agrees to reimburse Company its non-recoverable costs thereof.

The Commission found the proposed language inconsistent with the language it prescribed concerning the obligations of Kentucky Utilities after a customer gives notice of partial termination. 29 F.E.R.C. at ___.

Kentucky Utilities applied for rehearing, but rehearing was denied. *Kentucky Utilities Co.*, 30 F.E.R.C. ¶ 61,012 (1985). Kentucky Utilities then petitioned this court for review of the Commission's order modifying its compliance filing.

## II.

■ Section 313(b) of the Federal Power Act ("the Act"), 16 U.S.C. § 825*l*(b), requires that parties "aggrieved" by an order of the Commission must petition for review "within sixty days after the order of the Commission upon the application for rehearing." The reviewing court may consider only those objections "urged before the Commission in the application for rehearing unless there is reasonable ground for failure so to do." *Id.* Failure to comply with these provisions creates a jurisdictional bar

to judicial review. *See, e.g., Kentucky Utilities I,* 766 F.2d at 248; *Cincinnati Gas & Electric Co. v. F.E.R.C.,* 724 F.2d 550, 553 (6th Cir.1984); *Cities of Batavia v. F.E.R.C.,* 672 F.2d 64, 72–73 (D.C.Cir. 1982).

The purpose of section 313(b) is to require "not only administrative exhaustion but immediate action on the part of those aggrieved." *Boston Gas Co. v. F.E.R.C.,* 575 F.2d 975, 979 (1st Cir.1978). Thus, persons aggrieved by an order of the Commission may not obtain review of certain objections, while reserving other objections for later appeals. *City of Tacoma v. Taxpayers,* 357 U.S. 320, 336–39, 78 S.Ct. 1209, 1218–20, 2 L.Ed.2d 1345 (1958). Moreover, persons aggrieved may not, in the absence of some sort of ambiguity, seize upon a later order as a vehicle to collaterally attack a prior order. *Midwestern Gas Transmission Co. v. F.E.R.C.,* 734 F.2d 828, 832 (D.C.Cir.1984); *Texas Eastern Transmission Corp. v. F.P.C.,* 509 F.2d 182, 184 (5th Cir.1975) (per curiam). Issues that might have been, but were not, raised in a petition from a Commission order may not be raised in a petition for review of a subsequent order. *Midwestern Transmission,* 734 F.2d at 832.

In the instant case, the Commission argues that the four issues raised by Kentucky Utilities in this petition were or should have been raised in *Kentucky Utilities I,* and, therefore, Kentucky Utilities' petition is untimely and collateral. Kentucky Utilities, on the other hand, argues that its petition for review is neither untimely nor collateral because the compliance order expressly added terms and conditions which did not appear in Opinions Nos. 169 and 169–A. Kentucky Utilities further argues that these new terms and conditions are not "just and reasonable" within the meaning of section 205 of the Act, 16 U.S.C. § 824d(a). We reject Kentucky Utilities' argument and find that the compliance order did not impose new terms and conditions, but only enforced those established in Opinions Nos. 169 and 169–A.

With regard to the four issues raised by Kentucky Utilities in its petition, it first challenges the Commission's refusal to permit it to specify, in the availability clause of its revised rate schedule, that the rate is restricted to full requirements service. Kentucky Utilities argues that the proposed rate is suitable and available only for full requirements customers. In Opinion No. 169, the Commission determined that Kentucky Utilities had not justified its proposal to restrict the availability of the proposed rate to full requirements customers and ordered the restriction deleted from the availability clause. The Commission dismissed Kentucky Utilities' argument that the proposed rate was inappropriate for any type of service other than full requirements as an "unsupported assertion." 25 F.E.R.C. at ____.

On rehearing, Kentucky Utilities again claimed that the proposed rate was appropriate only for full requirements customers. The Commission rejected the argument refusing to foreclose the possibility that the rate was appropriate for both full requirements and partial requirements customers. Kentucky Utilities also argued that the Commission erred in striking the proposed availability clause without specifying the language to be contained in an appropriate availability clause. The Commission agreed and directed Kentucky Utilities to include in its availability clause the language "By contract." In the compliance order, the Commission required Kentucky Utilities to use the language explicitly specified in Opinion No. 169–A. Clearly, the Commission was not adding new terms and conditions.

Second, Kentucky Utilities challenges the Commission's deletion from the availability clause of the proposed contract language requiring customers to purchase "all of" their requirements from Kentucky Utilities. Kentucky Utilities argues that it should be permitted to specify in its contract that it is not obligated to provide any service other than full requirements. In Opinion No. 169, the Commission determined that Kentucky Utilities' proposal to restrict the service offered to full requirements customers was a change in service from the existing contracts which required Kentucky Utilities to provide full requirements service to the

customers if they so desired but did not require the customers to take their full requirements from Kentucky Utilities. The Commission held that Kentucky Utilities had not justified its proposal to restrict the availability of service to customers purchasing their full requirements from Kentucky Utilities. Thus, the language proposed by Kentucky Utilities restricting service to full requirements customers directly contravened the Commission's unambiguous holding.

Kentucky Utilities argues that even if Opinion No. 169 did preclude it from limiting the availability of service under its rate schedule to full requirements customers, Opinion No. 169 did not preclude it from specifying in the proposed contract that service is available to full requirements customers only. To the contrary, Opinion No. 169 cannot fairly be read as leaving room for Kentucky Utilities to insert the full requirements limitation in the proposed contract, while at the same time precluding Kentucky Utilities from inserting the identical limitation in the proposed rate schedule. The result in either instance would be a limitation of service to full requirements customers. Moreover, the Commission's regulations define "rate schedule" to include proposed contracts. 18 C.F.R. § 35.-2(b). In deleting the full requirements limitation from Kentucky Utilities' revised contract the Commission was not adding new terms and conditions, but was enforcing the clear directives of its earlier orders.

Third, Kentucky Utilities challenges the Commission's removal from the "compliance filing" of clauses added by Kentucky Utilities to the proposed contract and rate schedule permitting it to cancel the entire contract of a customer that gives notice of partial termination. Kentucky Utilities argues that it reasonably interpreted Opinions Nos. 169 and 169–A as allowing cancellation of the entire contract upon notice of partial termination. In Opinion No. 169, the Commission determined that each customer should be allowed to give notice of termination for part of its load. The Commission also approved a specific term and notice provision to be included in Kentucky Utilities' rate schedule: "[F]or loads of 25

MW or less, whether for all or part of the customer's requirements, the agreement may be cancelled by either party giving written notice three years in advance." 23 F.E.R.C. at 61,677. Since the language proposed by Kentucky Utilities would effectively prohibit customers from terminating part of their requirements, the Commission's deletion of the language cannot be deemed an addition of new terms and conditions.

Kentucky Utilities argues that the partial termination provision, to the extent that it requires Kentucky Utilities to supply an intervenor the partial requirements that remain after partial termination, unlawfully circumvents the procedures established by section 206 of the Act, 16 U.S.C. § 824e, which would require a customer seeking partial requirements service to file a complaint and prove that the utility should be required to provide that service. The Commission, in Opinion No. 169, rejected Kentucky Utilities' argument that partial termination should not be permitted because to do so would convert the contracts into contracts for partial requirements service. 23 F.E.R.C. at ___. Furthermore, Kentucky Utilities, in *Kentucky Utilities I*, argued that the effect of the partial termination provision was to require Kentucky Utilities to provide partial requirements service, and that this result was unlawful because partial requirements service had not been requested by intervenors. Rejecting this argument, this court expressly affirmed the Commission's partial termination provision. *Kentucky Utilities I*, 766 F.2d at 248. Therefore, Kentucky Utilities may not utilize this appeal to reargue the merits of the partial termination provision. *See, e.g., Department of Fish and Game v. F.P.C.*, 359 F.2d 165, 168 (9th Cir.1966).

Finally, Kentucky Utilities challenges the Commission's deletion of language from the notice and cancellation provision that would relieve Kentucky Utilities of the obligation to make additions to its facilities for service to the customer after the effective date of the customer's termination. The Commission, in Opinion No. 169, prescribed specific language concerning the obligations of Kentucky Utilities and the cus-

tomer after the customer gives notice of termination. Moreover, Kentucky Utilities' additional language makes no provision for partial termination, but instead allows Kentucky Utilities to stop planning to serve the entire requirements of any customer that gives notice of partial termination. Here again, the Commission, by enforcing its prior orders, was not adding new terms and conditions.

Our conclusion that Kentucky Utilities' petition for review is a second and untimely attempt to challenge the substance of Opinions Nos. 169 and 169–A is supported by the Commission's own interpretation of its prior orders. The Commission stated in the compliance order that Kentucky Utilities, through its compliance filing, was attempting to reargue the merits of questions already addressed in Opinions Nos. 169 and 169–A. In the complex area of ratemaking, the Commission's construction of its own opinions and orders is entitled to deference. *F.E.R.C. v. Triton Oil & Gas Corp.*, 712 F.2d 1450, 1462 (D.C.Cir.1983).

### III.

Accordingly, Kentucky Utilities' petition for review is dismissed.