**UNITED STATES of America, Plaintiff,**

v.

**SOUTHERN CALIFORNIA EDISON COMPANY, Defendant.**

**No. CIV–F–01–5167 OWW SM.**

United States District Court, E.D. California.

Jan. 9, 2004.

Courtney J. Linn, United States Attorney, Michael A. Hirst, United States Attorney, Sacramento, CA, Robert Simmons, Office of General Counsel/Pacific Region, U.S. Department of Agriculture, San Francisco, CA, for Plaintiff.

George L. O'Connell, Stevens and O'Connell, Sacramento, CA, for Defendant.

**MEMORANDUM DECISION AND ORDER RE: DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST, SECOND AND FIFTH CLAIMS AND TO STRIKE PARAGRAPH 72 AND PLEA FOR ATTORNEYS' FEES AND REQUESTS FOR JUDICIAL NOTICE**

WANGER, District Judge.

## I. *INTRODUCTION*

Before the court are defendant's motions to dismiss first, second and fifth claims of the complaint for lack of subject matter jurisdiction, arising from a dispute over the interpretation of the authority of the Department of Agriculture to enforce conditions imposed pursuant to 16 U.S.C. § 797 of a license issued by the Federal Energy Regulatory Commission ("FERC"), under 16 U.S.C. § 797 on the Federal Power Act ("FPA"), for the construction, operation and maintenance of hydroelectric project works located on the public lands and reservations of the United States, including national forests. When issuing licenses under 16 U.S.C. § 797(e), FERC is required to accept without modification conditions imposed by the Secretary of the Department under whose supervision the subject territory falls for the purpose of allowing the responsible Secretary to impose conditions on FERC licenses to ensure the adequate protection and utilization of such territories. *Id.*

Here, the United States, through the Secretary of Agriculture and the United States Forest Service ("Forest Service") seek to enforce a FERC license condition that shifts the risk of loss and liability, regardless of fault, to a licensee, Southern

California Edison Company ("SCE"), for any damages resulting from the construction, operation and/or maintenance of its hydroelectric utility power plant located in the Sierra National Forest. Plaintiff alleges standing as a third-party beneficiary of the license issued by FERC to SCE and seeks to enforce the risk-shifting condition which Plaintiff alleges was imposed under the "conditioning" jurisdiction of the Forest Service. Plaintiff alleges that the operation of SCE's utility plant constitutes an "ultra-hazardous" activity imposing strict liability for resulting damages and constitutes a "device which may kindle a fire" under Cal.Pub.Res.Code § 4435. The occurrence of a fire on the licensed property is alleged to be prima facie evidence of negligence under Cal.Pub.Res. Code § 4435. Plaintiff also seeks attorneys' fees pursuant to Cal. Health & Safety Code §§ 13009 and 13009.1 or, alternatively, under 31 U.S.C. §§ 3717, 3718.

SCE challenges the subject matter jurisdiction of the district court to hear any disputes arising out of a FERC license, arguing such claims fall exclusively within the jurisdiction of FERC and the Court of Appeals pursuant to 16 U.S.C. § 825i and 18 C.F.R. § 385.901. SCE further challenges the validity of the loss-shifting condition imposed by the FERC license. SCE claims its plant is neither an ultra-hazardous activity nor a "device which may kindle a fire" under applicable California law and there is no legal authority for recovery of attorneys' fees. In support of the present motion, SCE requests judicial notice of: (1) Project 2175 licensing Order, *In the Matter of SOUTHERN CALIFORNIA EDISON COMPANY, Project 2175,* 21 F.P.C. 419 (March 27, 1959); (2) Project 67 licensing Order, *Southern California Edison Company,* Project 67, 1978 WL 15720, 4 FERC P 61,147 (Aug. 9, 1978); (3) a document entitled "Memorandum of Understanding Between The Forest Service, United States Department of Agriculture and Southern California Edison, FPC Project No. 67" with bate stamp numbers "U.S. 013531" through "U.S. 013562;" (4) documents purported to be excerpts from a Forest Service Handbook published on the internet; and (5) a document entitled "Special Use Permit" with bate stamp numbers "U.S. 013563" through "U.S. 013566." Plaintiff argues that the foregoing documents are not properly subject to judicial notice.

## II. BACKGROUND

On August 24, 1994 a fire originated at SCE's hydroelectric utility plant located in the Sierra National Forest when one of its transformers shorted as a result of a trespassing squirrel. *See* Doc. 1, Complaint, filed February 9, 2001, and Doc. 8, Answer, filed Jun. 6, 2001. The fire spread and eventually consumed over 5,600 acres of land in the Sierra National Forest. At issue here are two licenses from United States agencies permitting SCE to operate and maintain its hydroelectric plant on federal lands within the Sierra National Forest. *Id.* The two FERC licenses are Project 2175 License and Project 67 License (the "FERC licenses"). Both FERC licenses include clauses that purport to impose liability on SCE for any and all damages resulting from the plant's operation and maintenance, regardless of fault (the "damage clauses").

Plaintiff filed this case January 24, 2003, seeking damages for breach of the FERC licenses and pursuant to the damage clauses (claims 1 and 2); breach of a Memorandum of Understanding and Special Use Permit (claims 3 and 4);[1] strict liability

---

1. Defendant has voluntarily withdrawn, without prejudice, its motion to dismiss claims 3 and 4 with regard to the Memorandum of Understanding and the Special Use Permit. *See* Doc. 33, Defendant's Reply # 1 at 11–12, filed Sept. 22, 2003.

for ultrahazardous activity (claim 5); trespass by fire (claim 6); various theories of negligence (claims 7, 9 and 10); and for reimbursement for litigation costs and attorney fees under 31 U.S.C. §§ 3711, 3717. *See* Doc. 19, Amended Complaint, filed Jun. 24, 2003. SCE moves to dismiss the Amended Complaint under F.R.C.P. Rules 12(b)(1), (b)(6), and (f). *See* Doc. 20, Motion to Dismiss, filed July 28, 2003.

SCE argues that the damage clauses are invalid and unenforceable (see Doc. 21, Defendant's Memo, filed July 28, 2003) and that Plaintiff's claims are under the exclusive jurisdiction of FERC so that FERC's decision not to pursue enforcement of its license provisions bars Plaintiff from raising such claims here. *Id.* SCE disputes that its plant constitutes an ultra-hazardous activity (creating a separate basis for strict liability under California law) and whether SCE's plant constitutes a "device which may kindle a fire" under Cal.Pub. Res.Code § 4435 (establishing prima facie evidence of negligence). SCE asserts Plaintiff cannot recover attorneys' fees. *See Id.* and Doc. 29, Opposition # 1, filed Sept. 16, 2003; Doc. 33, Defendant's Reply # 1, filed Sept. 22, 2003; Doc. 34, Opposition # 2, filed Sept. 24, 2003; and Doc. 36, Defendant's Reply # 2, filed October 3, 2003.

## III. *LEGAL STANDARD*

### A. *STANDARD ON MOTION TO DISMISS, RULE 12(B)(6)*

In determining whether a complaint is sufficient to withstand a Rule 12(b)(6) motion to dismiss, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Smith v. Jackson,* 84 F.3d 1213, 1217 (9th Cir.1996). *See also Miree v. DeKalb County,* 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977). A complaint "should not be dismissed unless it appears beyond doubt that plaintiff can

prove no set of facts in support of his claim which would entitle him to relief." *Van Buskirk v. Cable News Network, Inc.,* 284 F.3d 977, 980 (9th Cir.2002) (citations omitted); *see also Gilligan v. Jamco Dev. Corp.,* 108 F.3d 246, 249 (9th Cir.1997) (issue is not whether plaintiff will ultimately prevail, but whether claimant is entitled to offer evidence to support the claim). In deciding a motion to dismiss, the court accepts as true all material allegations in the complaint and construes them in the light most favorable to the plaintiff. *See Newman v. Sathyavaglswaran,* 287 F.3d 786, 788 (9th Cir.2002).

The court need not accept as true, allegations that contradict facts which may be judicially noticed. *See Mullis v. United States Bankruptcy Ct.,* 828 F.2d 1385, 1388 (9th Cir.1987). For example, matters of public record may be considered, including pleadings, orders, and other papers filed with the court or records of administrative bodies, *see Mack v. South Bay Beer Distributors,* 798 F.2d 1279, 1282 (9th Cir.1986), while conclusions of law, conclusory allegations, unreasonable inferences, or unwarranted deductions of fact need not be accepted. *See Western Mining Council v. Watt,* 643 F.2d 618, 624 (9th Cir.1981); *see also Branch v. Tunnell,* 14 F.3d 449, 453 (9th Cir.1994) ("[A] document is not 'outside' the complaint if the complaint specifically refers to the document and if its authenticity is not questioned."). Allegations in the complaint may be disregarded if contradicted by facts established by exhibits attached to the complaint. *See Durning v. First Boston Corp.,* 815 F.2d 1265, 1267 (9th Cir. 1987).

A complaint cannot be dismissed on a Fed.R.Civ.P. Rule 12(b)(6) motion for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims

which would entitle him to relief." *Barnett v. Centoni*, 31 F.3d 813, 813 (9th Cir.1994) (citing *Buckey v. County of Los Angeles*, 957 F.2d 652, 654 (9th Cir.1992)). *E.g., Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Parks School Of Business v. Symington*, 51 F.3d 1480, 1484 (9th Cir.1995); and *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir.1981).

Even when it appears "on the face of the pleadings that a recovery is very remote and unlikely," a motion to dismiss is inappropriate if sufficient facts are alleged which, if proven, would entitle plaintiff to relief. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). *Accord Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246 at 249 (9th Cir.1997). "The issue is not whether the plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer* at 236, 94 S.Ct. 1683.

Pleadings under the federal rules require only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. Rule 8(a). Courts have recognized that Fed.R.Civ.P. Rule 8(a) "contains a powerful presumption against rejecting pleadings for failure to state a claim." *Gilligan*, 108 F.3d at 249. "All that is required are sufficient allegations to put defendants fairly on notice of the claims against them." *McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991) (citing *Conley*, 355 U.S. at 47, 78 S.Ct. 99; 5 Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1202 (2d ed.1990)). Any facts pled generally are to be credited as embracing "whatever specific facts might be necessary to support [the claims]." *Peloza v. Capistrano Unified Sch. Dist.*, 37 F.3d 517, 521 (9th Cir.1994), *cert. denied*, 515 U.S. 1173, 115 S.Ct. 2640, 132 L.Ed.2d 878 (1995).

The district court cannot consider whether "the plaintiff can prove facts *different* from those alleged in the complaint." *McGrath v. Scott*, 250 F.Supp.2d 1218 at 1220 (citing *Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983)).

There are essentially three situations where dismissal for failure to state a claim is proper. A Rule 12(b)(6) dismissal may be based on "the lack of a cognizable legal theory or [on] the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir.1988). Dismissal is also proper when, under the facts alleged in the complaint, defendant would be entitled to an absolute defense or bar to recovery. *See Weisbuch v. County of L.A.*, 119 F.3d 778, 783 n. 1 (9th Cir.1997).

### B. STANDARD ON MOTION TO DISMISS, RULE 12(B)(1)

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a motion to dismiss for lack of subject matter jurisdiction. It is a fundamental precept that federal courts are courts of limited jurisdiction. Limits upon federal jurisdiction must not be disregarded or evaded. *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 374, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978). The plaintiff has the burden to establish that subject matter jurisdiction is proper. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 114 S.Ct. 1673, 1675, 128 L.Ed.2d 391 (1994). This burden, at the pleading stage, must be met by pleading sufficient allegations to show a proper basis for the court to assert subject matter jurisdiction over the action. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); Fed.R.Civ.P. 8(a)(1). When a defendant challenges jurisdiction *facially*, all

material allegations in the complaint are assumed true, and the question for the court is whether the lack of federal jurisdiction appears from the face of the pleading itself. *Thornhill Publishing Co. v. General Telephone Electronics,* 594 F.2d 730, 733 (9th Cir.1979); *Mortensen v. First Fed. Sav. & Loan Ass'n,* 549 F.2d 884, 891 (3d Cir.1977); *Cervantez v. Sullivan,* 719 F.Supp. 899, 903 (E.D.Cal.1989), *rev'd on other grounds,* 963 F.2d 229 (9th Cir.1992).

A defendant may also attack the existence of subject matter jurisdiction apart from the pleadings. *Mortensen,* 549 F.2d at 891. In such a case, the court may rely on evidence extrinsic to the pleadings and resolve factual disputes relating to jurisdiction. *St. Clair v. City of Chico,* 880 F.2d 199, 201 (9th Cir.1989); *Roberts v. Corrothers,* 812 F.2d 1173, 1177 (9th Cir. 1987); *Augustine v. United States,* 704 F.2d 1074, 1077 (9th Cir.1983). "No presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Thornhill Publishing,* 594 F.2d at 733 (quoting *Mortensen,* 549 F.2d at 891).

■ "Federal courts have original jurisdiction over all civil actions that 'arise under' the Constitution or laws of the United States." *Wander v. Kaus,* 304 F.3d 856, 858 (9th Cir.2002) citing 28 U.S.C. § 1331. "Most federal-question jurisdiction cases are those in which federal law creates a cause of action." *Wander v. Kaus,* 304 F.3d 856, 858 (9th Cir.2002) citing *Merrell Dow Pharms. Inc. v. Thompson,* 478 U.S. 804, 808, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986). "A case 'arises under' federal law either where federal law creates the cause of action or 'where the vindication of a right under state law necessarily turn[s] on some construction of federal law.'" *Republican Party of Guam v. Gutierrez,* 277 F.3d 1086, 1088–1089 (9th Cir.2002)

citing *Franchise Tax Bd. v. Construction Laborers Vacation Trust,* 463 U.S. 1, 8–9, 103 S.Ct. 2841, 77 L.Ed.2d 420, (1983) (citations omitted).

■ "[T]he presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Republican Party of Guam v. Gutierrez,* 277 F.3d 1086, 1089 (9th Cir.2002) citing *Rivet v. Regions Bank,* 522 U.S. 470, 475, 118 S.Ct. 921, 139 L.Ed.2d 912 (quoting *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987)) (internal quotation marks omitted).

■ Failure to plead a specific federal law statute, however, is not "fatal." *See Mir v. Fosburg,* 646 F.2d 342, 346–347 (9th Cir.1980). "Failure to allege specifically the statute conferring jurisdiction is not always fatal to an action if the facts showing jurisdiction appear in the complaint." *Id.* citing *Andrus v. Charlestone Stone Products Co.,* 436 U.S. 604, 607–08 n. 6, 98 S.Ct. 2002, 56 L.Ed.2d 570 (1978); *Fidelity & Casualty Co. v. Reserve Insurance Co.,* 596 F.2d 914, 918 (9th Cir.1979); *Harary v. Blumenthal,* 555 F.2d 1113 (2d Cir. 1977); C. Wright & A. Miller, Federal Practice & Procedure § 1209–1210 (1969); *see also Whitner v. Davis,* 410 F.2d 24 (9th Cir.1969) (Where complaint plainly indicated that plaintiff intended to invoke Civil Rights Act, failure of plaintiff to cite statute which gave court jurisdiction in her complaint was of no consequence).

■ The Court "ha[s] an independent obligation to address *sua sponte* whether [it] has subject-matter jurisdiction." *Dittman v. California,* 191 F.3d 1020, 1025 (9th Cir.1999).

## C. SUBJECT MATTER JURISDICTION

United States District Courts have jurisdiction over cases in which the United States is a party. 28 U.S.C. § 1345. The United States District Courts also have original jurisdiction over any civil action based "upon any express or implied contract with the United States" under 28 U.S.C. § 1346(a)(2). Further, 16 U.S.C. § 825p creates jurisdiction in the federal district courts to hear liability disputes arising out of the FPA. "The District Courts of the United States ... shall have exclusive jurisdiction ... of all suits in equity and actions at law brought to enforce any liability or duty created by, or to enjoin any violation of, [the FPA]." 16 U.S.C. § 825p (1988).

## D. MOTION TO STRIKE, RULE 12(f)

Rule 12(f) provides that "redundant, immaterial, impertinent, or scandalous matters" may be "stricken from any pleading." Fed.R.Civ.P. 12(f) (emphasis added). A motion to strike is limited to pleadings. *See Sidney–Vinstein v. A.H. Robins Co.,* 697 F.2d 880, 885 (9th Cir.1983). However, a "motion to strike" materials that are not part of the pleadings may be regarded as an "invitation" by the movant "to consider whether [proffered material] may properly be relied upon." *United States v. Crisp,* 190 F.R.D. 546, 551 (E.D.Cal.1999) (quoting *Monroe v. Board of Educ.,* 65 F.R.D. 641, 645 (D.Conn.1975) ("[A] motion to strike has sometimes been used to call to courts' attention questions about the admissibility of proffered material in [ruling on motions].") (citations omitted)).

Motions to strike are disfavored and infrequently granted. *See Pease & Curren Refining, Inc. v. Spectrolab, Inc.,* 744 F.Supp. 945, 947 (C.D.Cal.1990), *abrogated on other grounds by Stanton Road Associates v. Lohrey Enters.,* 984 F.2d 1015 (9th Cir.1993). Such motions should be granted only where it can be shown that none of the evidence in support of an allegation is admissible. *See id.*

## E. JUDICIAL NOTICE

■ "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed.R.Evid. 201(b) (1984). "A court shall take judicial notice if requested by a party and supplied with the necessary information." Fed.R.Evid. 201(d) (1984). Judicially noticed facts often consist of matters of public record, such as prior court proceedings, *see, e.g., Emrich v. Touche Ross & Co.,* 846 F.2d 1190, 1198 (9th Cir.1988) (administrative materials), *Barron v. Reich,* 13 F.3d 1370, 1377 (9th Cir.1994) (city ordinances), *Toney v. Burris,* 829 F.2d 622, 626–27 (7th Cir.1987) (city ordinances and official maps), *Aiello v. Town of Brookhaven,* 136 F.Supp.2d 81, 86 n. 8 (E.D.N.Y.2001) (geological surveys and existing land use maps), and *Rothman v. Gregor,* 220 F.3d 81, 92 (2d Cir.2000) (taking judicial notice of a filed complaint as a public record). Federal courts may "take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to the matters at issue." *U.S. ex rel Robinson Rancheria Citizens Council v. Borneo, Inc.,* 971 F.2d 244, 248 (9th Cir.1992).

## IV. ANALYSIS

### A. JUDICIAL NOTICE

SCE contends that, under *MGIC Indem. Corp. v. Weisman,* 803 F.2d 500, 504 (9th Cir.1986), judicial notice of a prior proceeding which is a matter of an official

public record is appropriate and that they are therefore entitled to judicial notice of: (1) Project 2175 licensing Order, *In the Matter of SOUTHERN CALIFORNIA EDISON COMPANY, Project 2175,* 1959 WL 3238, 21 F.P.C. 419 (March 27, 1959); (2) Project 67 licensing Order, *Southern California Edison Company,* Project 67, 1978 WL 15720, 4 FERC P 61,147 (August 9, 1978); (3) a document entitled "Memorandum of Understanding Between The Forest Service, United States Department of Agriculture and Southern California Edison, FPC Project No. 67" with bate stamp numbers "U.S. 013531" through "U.S. 013562;" (4) documents purported to be excerpts from a Forest Service Handbook published on the internet; and (5) a document entitled "Special Use Permit" with bate stamp numbers "U.S. 013563" through "U.S. 013566." *See* Doc. 22 at 3.

Plaintiff opposes each SCE request for judicial notice on the basis that: (1) the documents of which SCE seeks judicial notice are not accurate representations of the documents they purport to be; (2) the documents of which SCE seeks judicial notice are merely synopses of larger documents; and (3) the documents of which SCE seeks judicial notice omit references to exhibits, acceptance pages, exhibits incorporated by reference, and subsequent amendments of the licenses.

■ While a court may take judicial notice of a judicial or administrative proceeding which has a "direct relation to the matters at issue," a court can only take judicial notice of the *existence* of those matters of public record (the existence of a motion or of representations having been made therein) but not of the *veracity* of the arguments and disputed facts contained therein. *Id.* (quoting *Robinson,* 971 F.2d at 248). Similarly, a court may take judicial notice of the existence of certain matters of public record. A court may not take judicial notice of one party's opinion of how a matter of public record should be interpreted.

In *Gingo,* a defendant sought judicial notice that a co-defendants' pleading be deemed its own. *Id.* Defendant's request for judicial notice of the contents and arguments of the motion was denied because "[a] motion is a legal brief, advancing a partisan position in litigation, not a judicially noticeable fact." *Id. Gingo did not* hold that the existence and authenticity of a motion filed in a judicial proceeding and a matter of public record could not be judicially noticed. *Id.* While the authenticity and existence of a particular order, motion, pleading or judicial proceeding, which is a matter of public record, is judicially noticeable, veracity and validity of its contents (the underlying arguments made by the parties, disputed facts, and conclusions of applicable facts or law) are not. *See, e.g., Lee v. City of Los Angeles,* 250 F.3d 668, 690 (9th Cir.2001) (a court may take judicial notice of another court's opinion, but not of the truth of the facts recited therein); *Asdar Group v. Pillsbury, Madison & Sutro,* 99 F.3d 289, 290, fn. 1 (9th Cir.1996) (court may take judicial notice of the pleadings and court orders in earlier related proceedings); *Wyatt v. Terhune,* 315 F.3d 1108, 1114 (9th Cir.2003).

In *Bryant v. Carleson,* 444 F.2d 353, 357–58 (9th Cir.1971), the court properly took judicial notice of *the fact* that the defendant had filed an affidavit on November 24, 1970 along with documents said by him to support his argument. *Id.* at 357. The court *did not,* however, take judicial notice of the contents of the Defendant's November 24, 1970 affidavit as *being true. Id.* Similarly, the court in *Bryant* took judicial notice of *the fact* that another court had rendered a decision on March 25, 1971, and had established conclusions of law. *Id.* The *Bryant* court did not take judicial notice *of the truth* of any facts at

issue or disputed therein. *Id.* The *Bryant* court took judicial notice of *the fact* that on April 6, 1971, the plaintiffs had filed a motion to vacate the stay and dismiss the appeal and that facts and arguments recited therein had been made as a matter of public record. *Id.*

 Even where, under the doctrine of *stare decisis,* a court is generally compelled to abide by conclusions of law made in prior proceedings of higher courts, a court *cannot* take judicial notice of another court's determination of the truth of disputed facts. *Lee,* 250 F.3d at 690 (citing *Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group, Ltd.,* 181 F.3d 410, 426–27 (3rd Cir.1999)).[2] *See also, Wyatt v. Terhune,* 315 F.3d 1108, 1114 (9th Cir.2003) (while a court may judicially notice another court's order, it may not accept that court's findings of fact as true). In *Lee, supra,* the Ninth Circuit found that the district court properly took judicial notice of *the fact* that a waiver was signed in a prior proceeding. *Lee,* 250 F.3d at 689–90. However the Ninth Circuit reversed the district court's ruling because the court incorrectly took judicial notice of the *validity of that waiver,* a disputed fact yet unproved. *Id.* at 690.

 While the court may take judicial notice of the general meaning of words, phrases, and legal expressions, documents are judicially noticeable only for the purpose of determining what statements are contained therein, not to prove the truth of the contents or any party's assertion of what the contents mean. *See, e.g., Hennessy v. Penril Datacomm Networks, Inc.* 69 F.3d 1344, 1354–55 (7th Cir.1995); *Wilshire Westwood Assocs. v. Atlantic Rich-*

*field Corp.,* 881 F.2d 801, 803 (9th Cir. 1989).

"Judicial notice is taken of the existence and authenticity of the public and quasi public documents listed. To the extent their contents are in dispute, such matters of controversy are not appropriate subjects for judicial notice." *Del Puerto Water Dist. v. U.S. Bureau of Reclamation,* 271 F.Supp.2d 1224, 1234 (E.D.Cal.2003). *See also, California ex rel. RoNo, LLC v. Altus Finance S.A.,* 344 F.3d 920, 931 (9th Cir.2003) ("requests for judicial notice are GRANTED to the extent that they are compatible with FED. RULE EVID. 201 and do not require the acceptance of facts 'subject to reasonable dispute.' " quoting *Lee,* 250 F.3d at 690); *Kent v. Daimlerchrysler Corp.,* 200 F.Supp.2d 1208, 1219 (N.D.Cal. 2002); *Weizmann Institute of Science v. Neschis,* 229 F.Supp.2d 234, 246–47 (S.D.N.Y.2002); *Happy Inv. Group v. Lakeworld Properties, Inc.,* 396 F.Supp. 175, 183 (N.D.Cal.1975); and *Chloe Z Fishing Co. v. Odyssey Re (London) Ltd.,* 109 F.Supp.2d 1236, 1242–43 (S.D.Cal.2000).

Defendants' motion for judicial notice is GRANTED in part and DENIED in part. Defendants' motion for judicial notice that *SOUTHERN CALIFORNIA EDISON COMPANY, Project No. 2175,* 1959 WL 3238, 21 F.P.C. 419 reflects the existence and authenticity of an Order entered on March 27, 1959 by the Federal Power Commission and subsequently published is GRANTED. Defendants' motion for judicial notice that Southern California Edison Company, Project No. 67, 4 FERC P 61,-147 reflects the existence and authenticity of an Order entered on August 9, 1978 by the Federal Energy and Regulatory Com-

---

**2.** Judicial notice is distinguished from res judicata and collateral estoppel, which prevent a party from raising a claim or issue which has already been sufficiently addressed and decided in a prior proceeding where that party's interest was adequately represented. *See,*

*e.g., Robinson,* 971 F.2d at 249–53; *Allen v. McCurry,* 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980); *Thorley v. Superior Court,* 78 Cal.App.3d 900, 907, 144 Cal.Rptr. 557 (1978).

mission (successor to the Federal Power Commission) and subsequently published is GRANTED. Because Plaintiffs dispute the authenticity and completeness of the documents entitled "Memorandum of Understanding Between The Forest Service, United States Department of Agriculture and Southern California Edison, FPC Project No. 67" with bate stamp numbers "U.S. 013531" through "U.S. 013562;" and "Special Use Permit" with bate stamp numbers "U.S. 013563" through "U.S. 013566," SCE's request for judicial notice of these documents is DENIED. SCE's request for judicial notice of the existence of a document entitled "Forest Service Handbook" that is published on the internet at *http://www.fs.fed.us/im/directives/* is GRANTED. To the extent SCE seeks judicial notice of the veracity or authenticity of any arguments or conclusions of fact or law contained in the Handbook, SCE's request for judicial notice is DENIED.

## B. THE UNITED STATES HAS FIRST PARTY STANDING TO SUE FOR ANY ALLEGED BREACH OF THE LICENSES

A point of confusion in the parties' pleadings stems from the Plaintiff's improper categorization of itself as a "third party beneficiary" of a contract to which Plaintiff was actually *a party.* Amd'd Complaint at pp. 6 and 9. The licenses were issued by the Federal Power Commission (FPC) and its successor, the Federal Energy Regulatory Commission (FERC), of the United States. *Id.* at pp. 5 and 8. *See also,* Defendant's Memo at pp. 4 and 5. FERC (formerly FPC) is a subdivision of the Department of Energy, an executive agency for the United States of America. Its actions, when performed in accordance with the powers delegated to it by the executive branch and the legislature, are the actions of the United States. *See, e.g.,* U.S. Const. Art. I and II (creating the legislative branch of government

(Congress) and creating the executive branch of government (President and executory agencies)); 5 U.S.C. § 101 (creating the various subdivisions of the executive branch as "departments"); *Freytag v. Commissioner,* 501 U.S. 868, 885–86, 111 S.Ct. 2631, 115 L.Ed.2d 764 (1991) (recognizing that the various Departments, *i.e.,* Department of Agriculture, are divisions of the executive branch of government); *United States v. Germaine,* 99 U.S. 508, 510–11, 9 Otto 508, 25 L.Ed. 482 (1878) ("The clause we have cited is to be found in the article relating to the Executive, and the word as there used has reference to the subdivision of the power of the Executive into departments, for the more convenient exercise of that power. One of the definitions of the word given by Worcester is, 'a part or division of the executive government, as the Department of State, or of the Treasury.' Congress recognized this in the act creating these subdivisions of the executive branch by giving to each of them the name of a department. Here we have the Secretary of State, who is by law the head of the Department of State, the Departments of War, Interior, Treasury, etc."); *Cooke v. United States,* 91 U.S. 389, 401, 1 Otto 389, 23 L.Ed. 237 (1875) ("in this department the secretary represents the government. His acts and his omissions, within the line of his official duties, are the acts or omissions of the government itself"). It follows that licenses issued by FERC are licenses issued by the United States. FERC is merely the executive agency through which the United States generally handles matters involving federal regulation and licensing of energy. *Id.*

The Department of Agriculture acting through its subdivision, the Forest Service, is also an agent of the United States. 7 U.S.C. § 2201. The United States generally handles matters involving national forests through the Forest Service. 16

U.S.C. § 551. The Forest Service and FERC are therefore both agents with particularized authority to act on behalf of, and actually "as" the United States of America, under specific circumstances provided for under the constitution and federal statutes. *See, e.g.,* U.S. Const. Art I and II; 7 U.S.C. § 2201; 16 U.S.C. §§ 551 and 797, et seq.

Both the Forest Service and FERC were created for the purpose of carrying out the laws of the United States and to control and protect national interests through administrative regulation. *See, e.g.,* U.S. Const. Art I and II; 7 U.S.C. § 2201; 16 U.S.C. §§ 551 and 797, et seq. Both act within their capacity as agents of the United States in accordance with the powers vested in them by the Constitution and through their respective enabling statutes. *See, e.g.,* U.S. Const. Art I and II; 7 U.S.C. § 2201; 16 U.S.C. §§ 551 and 797, et seq. The Forest Service, a division of the United States Department of Agriculture, is empowered to act on behalf of the United States by and through 16 U.S.C. § 551 to secure, protect and preserve our national forests. *Id.* FERC is empowered to act on behalf of the United States by and through by 16 U.S.C. § 797, et seq., to issue licenses for and inspect the operation of hydro-electric generation and transmission facilities located on public lands and reservations of the United States. *Id.*

The legislature, recognizing that FERC and the Forest Service will sometimes have overlapping responsibilities, enacted 16 U.S.C. § 797(e) which requires the Secretary of the interested department to have significant involvement in determining the criteria and conditions for licenses to operate hydroelectric plants on government lands issued by the United States through FERC. Title 16 U.S.C. § 797(e) requires that licenses issued under that section "shall be subject to and contain such conditions as the Secretary of the department under whose supervision such reservation falls shall deem necessary for the adequate protection and utilization of such reservations." *Id.* " '[R]eservations' means national forests, tribal lands embraced within Indian reservations, military reservations, and other lands and interests in lands owned by the United States, and withdrawn, reserved, or withheld from private appropriation and disposal under the public land laws..." 16 U.S.C. § 796(2). The United States, acting through the condition-imposing department, the Secretary of Agriculture's Forest Service, is the proper party. The United States, not a third party, affirmatively seeks damages for an alleged breach of conditions of a license it issued. The United States has standing to sue for breach of licenses and agreements to which it is a party. Plaintiff has first party standing to sue for breach of the conditional license.

### C. 16 U.S.C. § 797 CREATES RIGHTS ENFORCEABLE BY THE PARTICULAR GOVERNMENT AGENCY RESPONSIBLE FOR PROTECTING THOSE RIGHTS

Even if the Forest Service were deemed to be so independent and separate from the United States with regard to the provisions in the disputed FERC licenses, it still has standing. Defendant is alleged to have breached a contractually-created duty owed directly to the United States Department of Agriculture with specific regard to the Sierra National Forest. The particular license conditions at issue (the damage clauses) were imposed by the United States for the purpose of protecting both its property and financial interests from the threat of damages posed by Defendant's utility operation. It is the function of the Forest Service, not the FERC, to account for the protection of the

United States with regard to national forests. 16 U.S.C. § 551.

Title 16, Chapter 12, Section 797(e) of the United States Code empowers FERC to issue licenses *"for the purpose of constructing, operating and maintaining* . . . *power houses, transmission lines, or other project works* . . . *for the development, transmission, and utilization of power*. . . *Provided,* That [such licenses] . . .shall be subject to and contain such conditions *as the Secretary of the department under whose supervision such reservation falls shall deem necessary for the adequate protection and utilization of such reservation[.]* " 16 U.S.C. § 797(e)(emphasis added). For the purpose of Chapter 12, Title 16 of the United States Code, " 'reservations' means national forests. . .' " 16 U.S.C. § 796(2). Even if under some theory FERC were so separate from the United States that its licenses were not deemed licenses issued *by* the United States, the United States still has standing to sue here, by and through the Forest Service, for violations of conditions of the FERC license imposed and created directly and expressly *for* the United States' protection and benefit. No other party has standing to enforce the licenses. While it is inappropriate to classify a claim by the United States for breach of the terms of the FERC licenses as an action brought by a third party, the United States nonetheless has standing to sue for breach of any provisions of the licenses it can establish were created for the purpose and protection of United States property and by the authority of the Department of Agriculture under 16 U.S.C. § 797(e).

The Project 2175 License and Project 67 License,[3] impose virtually identical obligations on the Defendant to "do every-

thing reasonably within its power. . . to prevent, make advanced preparations for suppression [of], and [to] suppress fires on lands occupied under the [respective] license." Amd'd Complaint at 6 and 9, Doc. 22, Defendant's Request for Judicial Notice filed July 28, 2003, at Exhibits A and B. Project License 2175 requires in part:

> The Licensee shall be liable for injury to, or destruction of, any buildings, bridges, roads, trails, lands or other property of the United States, occasioned by the construction, maintenance, or operation of the project works or of the works appurtenant or accessory thereto under the license. Arrangements to meet such liability, either by compensation for such injury or destruction, or by reconstruction or repair of damaged property, or otherwise shall be made with the appropriate department or agency of the United States.

Doc. 22, Exhibit A.

Similarly, Project License 67 provides:

> The licensee shall be liable for and shall pay the costs incurred by the United States in suppressing fires caused from the construction, operation, or maintenance of the project works or of the works appurtenant or accessory thereto under the license.

Doc. 22, Exhibit B.

Defendant correctly points out that 16 U.S.C. § 803 does not create a private cause of action against a FERC licensee by a party injured by the operation of its utility plant. *See* Defendant's Memo at 11. *See DiLaura v. Power Authority,* 982 F.2d 73, 78 (2nd Cir.1992). The relevant portion of 16 U.S.C. § 803 reads as follows:

---

**3.** In Doc. 33, Defendant's Reply # 1, filed Sept. 22, 2003, Defendant withdraws its motion to dismiss Plaintiff's third and fourth claims for relief based on the 1971 Memorandum of Understanding and the 1949 Special Use Permit. Accordingly, claims 3 and 4 need not be addressed.

Each Licensee hereunder shall be liable for all damages occasioned to the property of others by the construction, maintenance, or operation of the project works or of the works appurtenant or accessory thereto, constructed under the license, and in no event shall the United States be liable therefor.

16 U.S.C. § 803(c). The legislative history of § 803(c) indicates that, in creating § 803(c), "Congress simply wanted to preserve the right of injured property owners to bring actions for damages against licensees in state court under traditional state tort law, and to shield the United States against liability." *DiLaura v. Power Authority,* 786 F.Supp. 241, 249 (W.D.N.Y. 1991). The original version of the bill "reveals an intent to preserve existing state liability laws:

> No license hereunder shall have the effect of relieving the licensee from liability for any injury or damages occasioned by the construction, maintenance, or operation of said project works; and the United States shall in no event by liable therefor."

*DiLaura,* 982 F.2d at 78 (quoting H.R.Rep. No. 715, 65th Congress, 2nd Session, § 10(c) at 6 (1918)).

*DiLaura* further notes "[t]he floor debate on the FPA also indicates that property damage caused by licensees was to be determined by reference to state law." *DiLaura,* 982 F.2d at 78 (citing 56 Con. Rec. 9913–14 (daily ed. Sept. 3, 1918)). The Supreme Court concluded that the FPA "leaves to the states their traditional jurisdiction subject to the admittedly superior rights of the Federal Government." *First Iowa Hydro–Elec. Coop. v. Federal Power Comm'n,* 328 U.S. 152, 171, 66 S.Ct. 906, 90 L.Ed. 1143 (1946).

That the United States brought the present suit indicates the Department of Agriculture has interpreted the FERC licensing conditions, for which it is responsible, as properly enforceable in the present action by the parties here. *See Pacific Gas and Electric Company v. Federal Energy Regulatory Commission,* 720 F.2d 78, 84 (D.C.Cir.1983) "An agency's interpretation of the statute it administers is entitled to deference... as is its construction of the license agreements it negotiates and oversees." *Id.* (citing *Zenith Radio Corp. v. United States,* 437 U.S. 443, 450, 98 S.Ct. 2441, 57 L.Ed.2d 337 (1978), *Andrew G. Nelson, Inc. v. United States,* 355 U.S. 554, 558, 78 S.Ct. 496, 2 L.Ed.2d 484 (1958), *Alabama Power co. v. F.E.R.C.,* 584 F.2d 750, 753–54 (5th Cir.1978), and *Harrison v. F.E.R.C.,* 567 F.2d 308, 310 (5th Cir.1978)).

The conditions imposed by interested departments in accordance with 16 U.S.C. 797(e) are mandatory and must be accepted by FERC without modification. *California Save Our Streams Council, Inc. v. Yeutter,* 887 F.2d 908, 909 (9th Cir.1989).

The FPA authorized FERC to issue licenses for the construction and operation of hydroelectric projects. 16 U.S.C. § 797(e). Licenses may include, inter alia, conditions imposed by the Secretary with jurisdiction over the proposed site of the project. Under the FPA, FERC is required to accept, without modification, reasonable restrictions imposed by the Secretary.

*Id.* (citing *Escondido,* 466 U.S. at 772–79, 104 S.Ct. 2105).

## D. FERC HAS EXCLUSIVE JURISDICTION TO HEAR CHALLENGES TO ITS ISSUANCE OF FPA LICENSES; FERC HAS NO AUTHORITY TO ADJUDICATE COMMON LAW CLAIMS OF LIABILITY ARISING THEREUNDER

While the United States has standing to sue for the breach of any

terms of its own license agreements, Defendant argues that only FERC has jurisdiction to hear such claims. *See* Defendant's Memo at 10. Defendant's argument misconstrues the extent of FERC's authority with regard to licensing and the scope of its administrative review. In support of the argument that FERC has exclusive jurisdiction over any action having to do with a FERC license, Defendant cites *Friends of Cowlitz v. FERC,* 253 F.3d 1161(9th Cir.2001), *as amended by* 282 F.3d 609 (9th Cir.2002). *See* Reply # 1 at 2.

Title 16 U.S.C. § 825p provides:

The District Courts of the United States, and the United States courts of any Territory or other place subject to the jurisdiction of the United States shall have exclusive jurisdiction of violations of this chapter or the rules, regulations, and orders thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by, or to enjoin any violation of, this chapter or any rule, regulation, or order thereunder.

16 U.S.C. § 825p. This statute is unambiguous. Several courts have ruled on facts similar to those presented here that § 825p requires that the United States District Court have exclusive jurisdiction over injured parties seeking to enforce provisions of FERC licenses. *See, e.g., State of Cal. By and Through Dept. Of Water Resources v. Oroville–Wyandotte Irrigation Dist.,* 411 F.Supp. 361 (E.D.Cal. 1975) *affirmed* 536 F.2d 304, *cert. denied* 429 U.S. 922, 97 S.Ct. 320, 50 L.Ed.2d 290; *Allegheny Elec. Coop. Inc., v. Power Authority of NY,* 630 F.Supp. 1271 (S.D.N.Y. 1986); *Mississippi Power & Light Co. v. Federal Power Commission,* 131 F.2d 148 (5th Cir.1942); *DiLaura v. Power Authority of NY,* 654 F.Supp. 641 (W.D.N.Y. 1987).

The final disposition of *Cowlitz* raises questions under the statute giving federal district courts authority to enforce violations of the FPA, 16 U.S.C. § 825p. *Cowlitz* is distinguishable. *Cowlitz* reached the Court of Appeals after summary dismissal by FERC. 253 F.3d at 1164–65. The Court of Appeals was exercising direct appellate review for a license order challenge initially brought before FERC. *Id.* at 1165–66. The disputed license in *Cowlitz* was up for re-licensing and the parties were negotiating relevant conditions. *Id.* at 1170. The plaintiffs had filed an administrative challenge against FERC, alleging that FERC violated a duty to enforce its licensing provisions under 16 U.S.C. § 823b(a). *Id.* Here, Plaintiff sues the *licensee* for alleged violations of the license involving jurisdiction granted by 16 U.S.C. § 825f. *Cowlitz* dealt with the interpretation of FERC's authority to investigate and hold hearings as necessary to require compliance with the terms and conditions of its licenses. *Id.* The *Cowlitz* court noted the authority granted FERC under 16 U.S.C. § 823b(a) is optional in nature and implies discretion on the part of FERC as to whether it wishes to impose certain license requirements or not. "[T]he Commission may issue such orders as necessary to require compliance with the terms and conditions of licenses and permits issued under this subchapter..." 16 U.S.C. § 823b(a). *Cowlitz* rejected the plaintiff's contention that this language somehow created an affirmative obligation on the part of the Commission to investigate claims of noncompliance.

██ The inapplicability of *Cowlitz* is explainable on two grounds: (1) arguably the administrative process was not fully exhausted; if it was (2) the challenge was to the alleged failure to, or inefficient exercise of, administrative agency discretion in performance of its legislative licensing

functions. Here, damage claims are asserted under a liability-creating provision of a license, addressing harm that is actualized. An interpretation of the FPA to delegate exclusive jurisdiction to enforce license provisions of FERC is directly contradictory to 16 U.S.C. § 797(e)'s express language creating conditioning jurisdiction in the Secretaries of the departments who have licensing authority and the grant of jurisdiction to the district court of the United States to resolve disputes. A statute should be interpreted to comport with its subparts. *See, e.g., United States v. Morton,* 467 U.S. 822, 828, 104 S.Ct. 2769, 81 L.Ed.2d 680 (1984); *Liteky v. U.S.,* 510 U.S. 540, 553, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994); *Sierra Club v. Watt,* 608 F.Supp. 305 n. 51 (E.D.Cal.1985); and *Flint v. State of California,* 594 F.Supp. 443, 447 (E.D.Cal.1984). The notion that the Secretaries for whom § 797(e) conditions are created could not enforce those conditions in the district courts under 16 U.S.C. 825p would undermine the legislative structure of the FPA. The FPA makes mandatory the conditions imposed by the Secretaries. 16 U.S.C. § 797(e). FERC must accept and include such conditions in its licenses even where it disagrees with them. *See, e.g., Escondido Mutual Water Company v. La Jolla Band of Mission Indians,* 466 U.S. 765, 772, 104 S.Ct. 2105, 80 L.Ed.2d 753 (1984); *California Save Our Streams Council, Inc. v. Yeutter,* 887 F.2d 908, 909 (9th Cir.1989). This mandatory requirement cannot logically be reconciled with a finding that only FERC can enforce such conditions, administratively and non-judicially. The interest in enforcing § 797(e) conditions lies with the Secretary who supervises the subject lands. The FPA's mandatory requirement that FERC accept, without modification and despite conflict, the Secretaries' conditions indicates that FERC's interests may at times be in conflict with the Department of Agriculture's. If 16 U.S.C. § 797(e) is to have effect, Defendant's claims that FERC has exclusive jurisdiction to enforce license terms must be rejected.

FERC has many responsibilities, to regulate the interstate transmission of natural gas, oil and electricity. 16 U.S.C. § 797. FERC regulates wholesale sales of electricity and oil. *Id.* FERC monitors the energy markets and ensures that energy companies are charging rates in accordance with the law. *Id.* One of FERC's responsibilities include the issuance of licenses for hydroelectric projects which operate on federal land. 16 U.S.C. § 797(e). When a party has a grievance regarding the FERC's issuance (or non-issuance) of a particular licensing order, the law vests FERC with exclusive jurisdiction to conduct a rehearing and, if necessary, an investigation into the validity of the proposed issuance (or denial of issuance). 16 U.S.C. § 8251(b). *California Save Our Streams Council, Inc. v. Yeutter,* 887 F.2d 908, 911 (9th Cir.1989). However, FERC's sole jurisdiction is with regard to *issuance* of licenses. *Id.* FERC has no jurisdiction to determine when and under what circumstances a breach of its license has occurred or to adjudicate and award damages. "FERC cannot award damages, [although] the Supreme Court has recognized a variety of ... common law causes of action ...." *Skokomish Indian Tribe v. United States,* 332 F.3d 551, 559 (9th Cir.2003) (citing *United States v. Pend Oreille Public Utility Distr. No. 1,* 28 F.3d 1544, 1549–51 (9th Cir.1994)). Moreover, the requirement that claims be decided under state law principles is a judicial -not an administrative agency function. Both *Skokomish* and *Pend Oreille* recognize that parties injured by a licensee's conduct extrinsic to that authorized by the FERC license are entitled to sue on common law claims for damages. In *Pend Oreille,* an Indian tribe was allowed to maintain a state-based cause of action for trespass

damages where a FERC licensee's utility plant flooded surrounding lands (the license did not entitle the utility licensee to flood the surrounding lands). *Pend Oreille*, 28 F.3d at 1549–51. In *Skokomish*, the Court denied plaintiff's state-based claims because the alleged wrongful conduct was admittedly in conformity with the FERC license and therefore constituted an attack on the license itself (a matter entirely within the jurisdiction of FERC and the Court of Appeals).

Judicial review of a challenge to a FERC licensing order may only be had in the United States Court of Appeals. 16 U.S.C. § 8251. "The FPA provides a scheme governing challenges to FERC licensing decisions." *Skokomish*, 332 F.3d at 559 (citing 16 U.S.C. § 8251(b)). Here, no party challenges FERC's issuance (or denial) of a license order which would fall under the exclusivity purview of 16 U.S.C. § 8251. To the contrary, Plaintiff seeks damages for an alleged breach of what Plaintiff claims is a valid and enforceable FERC license condition. *See* Amd'd Complaint at 6 and 9. A claim by Plaintiff challenging the validity or propriety of the issuance of the license would lie outside the jurisdiction of the district court.

 To the extent a party seeks to enforce obligations created by a FERC license order, jurisdiction is appropriate in the federal district courts. 16 U.S.C. § 825p. The enforcement provision of the FPA "gives the federal district courts the authority to enforce FERC's orders." *Allegheny Electric Cooperative v. Power Authority of NY*, 630 F.Supp. 1271, 1273 (S.D.N.Y.1986). Even if Defendant argued it is seeking to challenge FERC's *issuance* of the license orders, this argument fails because 16 U.S.C. § 8251 has a strict procedural scheme whereby a party seeking to challenge a FERC licensing order (issuance or denial of issuance) must petition FERC for a rehearing within thirty (30) days after the license order is issued. *See* 16 U.S.C. § 8251(a). This did not occur. Only after FERC issues an order on the rehearing or denies the rehearing altogether, may judicial review of the order issuing (or denying issuance of) the license be sought in the Court of Appeals. *See* 16 U.S.C. § 8251(b). An aggrieved party must seek judicial review within sixty (60) days following FERC's order on rehearing (or denial thereof). *Id.* Failure to comply with the strict time requirements of this section results in a jurisdictional bar to judicial review of FERC's issuance (or denial of) the license order. *Kentucky Utilities Co. v. United States Federal Energy Regulatory Com'n*, 789 F.2d 1210 (6th Cir. 1986). If Defendant believed that the FERC licenses were challengeable on any ground, Defendant was required to petition FERC within the time prescribed by the statute. *Id.* Because Defendant has never challenged FERC's issuance of the license orders until now, several years after the time for raising any challenge has expired under 16 U.S.C. § 8251, such challenge is jurisdictionally barred. The license orders are deemed valid and enforceable. *Id.*

In *Skokomish Indian Tribe v. United States*, 332 F.3d 551, 559 (9th Cir.2003), the Ninth Circuit recognized that a plaintiff aggrieved by a licensee's failure to comply with the terms of a FERC license had a claim for damages. *Id. Skokomish* distinguished between a common claim for damages resulting from a licensee's nonconforming conduct and an improper collateral attack on the license itself. *Skokomish* recognized that a plaintiff could not sue for damages resulting from conduct conforming to requirements of the FERC license. *Skokomish* held that plaintiff's request for "damages although the City constructed and operated the Project in accordance with its federal license...[constituted] collateral attacks on

FERC's licensing order, and are not similar to the extrinsic [state-based] claim in *Pend Oreille* where the Utility's activity under scrutiny was *not authorized by the FERC license.*" *Id.* at 561 (citing *United States v. Pend Oreille Public Utility Distr. No. 1,* 28 F.3d 1544 (9th Cir.1994)).

Plaintiff's common law claims for damages arising from a fire subject to liability-shifting provisions of a FERC license are proper to the extent they do not conflict with federal law. *See infra,* Part B ii. Necessarily, FERC's responsibilities and purposes overlap with the responsibilities of other agencies of the United States government, as here where the FERC-licensed utility operates on government lands, in a national forest. The scheme of 16 U.S.C. § 797(e) demonstrates that congress sought to address this overlap in agency functions by requiring FERC to incorporate into its licenses conditions created by the Secretary under whose supervision the subject territory falls. *Id.* Here, the Secretary of Agriculture delegated duties with regard to the National Forest System to the United States Forest Service. The United States Supreme Court has established that, even where FERC disagrees with the terms and conditions imposed by the relevant department's Secretary, it must include those conditions so long as such conditions are consistent with law and supported by the evidence. *Escondido Mutual Water Company v. La Jolla Band of Mission Indians,* 466 U.S. 765, 772, 104 S.Ct. 2105, 80 L.Ed.2d 753 (1984). "The mandatory nature of the language chosen by Congress appears to require that [FERC] include the Secretary's conditions in the license even if it disagrees with them." *Id.*

The duty imposed on FERC by 16 U.S.C. § 797(e) to include the interested Secretary's conditions in licenses has been found to be mandatory in order for both agencies to achieve their respective pur-poses. *Id.* In constructing the condition requirement of § 797(e), "Congress was no doubt interested in centralizing federal licensing authority into one agency, but it is clear that it did not intend to relieve the Secretaries of all responsibility for ensuring that reservations under their respective supervision were adequately protected." *Id.* at 773, 104 S.Ct. 2105.

While it was administratively efficient to have FERC be responsible for the issuance of licenses, this power was not intended by Congress to "interfere with the special responsibilities which the several Departments have over the National Forests, public ·lands and navigable rivers." Memorandum on Water Power Legislation from O.C. Merrill, Forest Service Chief Engineer and draftsman of the FPA, dated October 31, 1917, App. 371. Rather, § 797(e) was created "for the purpose of preserving the administrative responsibility of each of the three Departments over lands and other matters within their exclusive jurisdiction." *Id.* at 373–374. *Escondido* recognized "[i]t is thus clear enough that while Congress intended that the Commission would have exclusive authority to issue all licenses, it wanted the individual Secretaries to continue to play the major role in determining what conditions would be included in the license in order to protect the resources under their respective jurisdictions." While Congress did not specifically declare that the respective Secretaries would also have authority to enforce such conditions through adjudication or otherwise, the legislative history surrounding the creation of § 797, *et seq.,* makes any other interpretation inapposite. Had Congress intended to prevent § 797(e) conditions from being enforced by the respective Secretaries, leaving their enforcement entirely within the exclusive jurisdiction of FERC, the very purpose of § 797(e) would be defeated. A statute

should not be read to be self-defeating. Through § 797(e) Congress recognized that other agencies need to maintain control and jurisdiction over activities affecting the lands for which they are responsible. *Id.* FERC's purpose and expertise is not in the area of forestry, protection of wildlife, other related national resources, or land management. Yet Defendant argues that the enforcement of each department's imposed conditions reside solely with FERC. A reasonable construction of this statute empowering the respective departments with authority under their "conditioning jurisdiction," to enforce and/or seek damages for a licensee's breach of their terms serves the legislative purpose of implementing the important goals and interests of other agencies in which FERC has no expertise or interest. Finally, FERC has no jurisdiction to adjudicate a common law damages claim advanced by the United States in which it has a direct conflict as a United States agency.

 The fact that federal agencies have overlapping authority and work for the common purpose of protecting and advancing the interests of the United States is evidenced by subsections of enabling statutes such as 16 U.S.C. § 803(a), which specifically acknowledge the fact that agencies are to work together. Where a statute expressly creates judicial jurisdiction, parties cannot be relegated to exclusively administrative remedies. *Darby v. Cisneros*, 509 U.S. 137, 144–45, 113 S.Ct. 2539, 125 L.Ed.2d 113 (1993).

### E. THE LICENSES IMPOSE CONDITIONS ENFORCEABLE UNDER CALIFORNIA LAW

*i. FERC License Conditions Are Judicially Enforceable*

 Several cases hold the FPA reserves common law claims to injured parties against FERC licensees for conduct falling outside the authority of the FERC license. *See, e.g., Skokomish Indian Tribe v. United States*, 332 F.3d 551, 559 (9th Cir.2003); *United States v. Pend Oreille Public Utility Distr. No. 1*, 28 F.3d 1544, 1549–51 (9th Cir.1994); *Nez Perce Tribe v. Idaho Power Co.*, 847 F.Supp. 791 (D.Idaho 1994); *Attorney General v. Consumers Power Co.*, 202 Mich.App. 74, 508 N.W.2d 901 (1993); and *In re Indiana Michigan Power Co.*, 1995 WL 456434, 72 FERC P 61,153 (1995). Title 16 U.S.C. § 803 preserves an injured party's common law claims for damages caused by a licensee's conduct contrary to the requirements of a FERC license. Plaintiff is entitled to bring the present claim for common law negligence and contract theories even when the duty alleged to have been breached arises directly from the duties created by a FERC license.

Plaintiff claims damages for federal common law breach of the license provisions which impose liability on Defendant for all damages caused by the operation of its plant, regardless of fault. *See* Amd'd Complaint at 5–6 and 8–9. Plaintiff alleges that, by failing to pay the damages caused by the operation of Defendant's plant, Defendant has breached that duty in violation of the FERC licenses. The jurisdictional question necessarily arises as to the appropriate forum to properly determine when a licensee's conduct violates requirements of a FERC License and appropriate damages therefor.

On closely analogous facts, the Michigan Court of Appeals found that 16 U.S.C. § 803 preserved an injured party's state-based claims against an FPA licensee for damages resulting from the licensee's operation of a hydroelectric utility plant. *See Attorney General v. Consumers Power Company*, 202 Mich.App. 74, 78, 508 N.W.2d 901 (1993). The relevant portion of 16 U.S.C. § 803 states: "Each licensee hereunder shall be liable for all damages

occasioned to the property of others by the construction, maintenance, or operation of the project works or of the works appurtenant or accessory thereto, constructed under the license, and in no event shall the United States be liable therefor."

 No part of the FPA expressly prohibits a property holder from bringing suit for damages caused by a licensee's failure to act as mandated by a FERC license. In fact, 16 U.S.C. § 825p creates jurisdiction in the federal district courts to enforce FERC licenses. *Id.* The inquiry turns to choice of law: what substantive law applies in the federal district court for such actions. Where there is no specific federal law governing the issues to be decided, a federal court must normally apply state law. *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) (except in matters governed by the Constitution or acts by Congress, law to be applied by federal courts is the law of the state).

*Consumers Power* concluded that " § 10 of the FPA [16 U.S.C. § 803(c) ] expressly allows an owner of property damaged by a federal licensee to recover for all damages incurred... subject to the limitations of state tort laws." *Id.* at 78, 508 N.W.2d 901. Citing to Supreme Court authority, *Consumers Power* notes that "[t]he presumption is that powers historically belonging to the states are not preempted by federal legislation unless that is the clear and manifest purpose of Congress." *Id.* at 77, 508 N.W.2d 901 (citing *Puerto Rico Dep't of Consumer Affairs v. Isla Petroleum Corp.,* 485 U.S. 495, 108 S.Ct. 1350, 99 L.Ed.2d 582 (1988)).

Recognizing the lack of authority in support of the argument that Congress intended the FPA to "exclusively occupy the field regarding a licensee's contractual relationships," *Consumers Power* held that plaintiff's state-based claims against the licensee would only be preempted if the applicable state law conflicted with relevant federal law. *Id.* at 79, 508 N.W.2d 901 (citing *English v. General Electric Co.,* 496 U.S. 72, 110 S.Ct. 2270, 110 L.Ed.2d 65 (1990)). "A state law conflicts with federal law when it 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Consumers Power,* 202 Mich.App. at 79, 508 N.W.2d 901 (quoting *English,* 496 U.S. at 79, 110 S.Ct. 2270).

Plaintiff argues that its breach-of-license claims arise under the federal common law applicable to contracts. *See* Opposition at 4. "[I]n cases where the rights and duties of the United States find their roots in federal sources, a federal court is not bound by *Erie* to apply state law." *Montana v. United States,* 124 F.3d 1269, 1274 (Fed.Cir.1997) (citing *Clearfield Trust Co. v. United States,* 318 U.S. 363, 366, 318 U.S. 744, 63 S.Ct. 573, 87 L.Ed. 838 (1943) and *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)). If there *were* an applicable federal statute or rule of law governing contract claims for breach of a federal license, under *Clearfield Trust,* that law should apply to determine the parties' rights. Recognizing that there will not always be applicable federal law governing the issues, *Clearfield Trust* provides "[i]n the absence of an applicable act of Congress it is for the federal courts to fashion the governing rule of law according to their own standards." *Clearfield Trust,* 318 U.S. at 367, 63 S.Ct. 573. The Supreme Court later refined this holding in *United States v. Kimbell Foods, Inc.,* 440 U.S. 715, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1979), holding that for a federal court to "fill the interstices of federal legislation 'according to their own standards,'" the court must determine whether to create federal common law or to incorporate state law as the rule of decision. *Id.* at 727, 99 S.Ct. 1448 (quoting *Clearfield Trust,* 318 U.S. at 367, 63 S.Ct. 573).

■ "Whether to adopt state law or to fashion a nationwide federal rule is a matter of judicial policy 'dependent upon a variety of considerations always relevant to the nature of the specific governmental interests and to the effects upon them of applying state law.'" *Kimbell Foods*, 440 U.S. at 728, 99 S.Ct. 1448 (quoting *United States v. Standard Oil Co.*, 332 U.S. 301, 310, 67 S.Ct. 1604, 91 L.Ed. 2067 (1947)). In matters where "there is little need for a nationally uniform body of law, state law may be incorporated as the federal rule of decision," so long as application of the state law in the given circumstances would not "frustrate specific objectives of the federal programs." *Kimbell Foods*, 440 U.S. at 728, 99 S.Ct. 1448 (citing *Miree v. DeKalb County*, 433 U.S. 25, 28–29, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977)); *RFC v. Beaver County*, 328 U.S. 204, 209–10, 66 S.Ct. 992, 90 L.Ed. 1172 (1946); *United States v. Brosnan*, 363 U.S. 237, 241–42, 80 S.Ct. 1108, 4 L.Ed.2d 1192 (1960); *United States v. Yazell*, 382 U.S. 341, 356–57, 86 S.Ct. 500, 15 L.Ed.2d 404 (1966); *and Auto. Workers v. Hoosier Cardinal Corp.*, 383 U.S. 696, 701–03, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966).

FERC licensees are already required to conduct themselves, not only in accordance with the FERC license terms, but also in conformity with the laws of the state in which they operate (subject to relevant federal preemption), FERC licensees would not be prejudiced, nor would FERC's objectives be frustrated, by the application of state rules of contract law in enforcing FERC license agreements, where their application is not otherwise preempted.[4]

In *Consumers Power*, the Department of Natural Resources brought an action in state court against a FERC hydroelectric plant licensee for negligent destruction of property and conversion where a substantial number of fish were killed and discharged into Lake Michigan as a result of the plant's operation. *See Consumers Power*, 202 Mich.App. at 76–77, 508 N.W.2d 901. *Consumers Power* held "[b]ecause the fish resources destroyed by the plant are held in trust by the state for the people, the state is empowered to bring a civil action to protect those resources." *Id.* at 77, 508 N.W.2d 901 (citing *Attorney General v. Hermes*, 127 Mich. App. 777, 339 N.W.2d 545 (1983)). *Consumers Power* held that the FPA did not preempt plaintiff's state-based claims for damages caused by the operation of a hydroelectric plant licensed by FERC. *Id.* at 79, 508 N.W.2d 901. The only claims found by *Consumers Power* to be in conflict with, and thus preempted by federal law, were those claims which, if successful, would have a result which conflicted with the FPA. *Id.* at 80, 508 N.W.2d 901. The Plaintiff here seeks damages pursuant to a license provision issued *by* FERC in accordance with the requirements of the FPA. The relief sought does not conflict with, but rather facilitates, the federal agencies in enforcing these licenses. Plaintiff's claim for state-based contractual relief is not barred under the FPA. *Attorney General v. Consumers Power Co.*, 202 Mich. App. 74, 508 N.W.2d 901 (1993) holds that the FPA does not preempt the maintenance of a damage suit before a state court. *See also, In re Indiana Michigan Power Co.*, 72 FERC P 61,153 (1995), *City of Tacoma, Washington*, 84 FERC P 61,-107 (1998). Absent applicable federal common law contract principles, California state substantive contract law shall apply to determine the relative rights of the parties involved here.

---

**4.** *See infra,* discussion at p. 986–87. (Application of state law to FERC licensees in general).

*ii. Plaintiff States Claims under California Contract and Tort Law*

 Licenses are not much different than common law contracts. While a license in real property is the authority to engage in certain permitted acts upon the land of another, it is distinguished from common law contract principles in that it is an impermanent, personal, always revocable, unassignable privilege and cannot constitute a legal interest in land. *See, e.g., Smith v. Royal Ins. Co.*, 111 F.2d 667, 670 (9th Cir.1940), *cert.denied* 311 U.S. 676, 61 S.Ct. 43, 85 L.Ed. 435; *U.S. v. Southern Pac. Transp. Co.*, 543 F.2d 676, 697 (9th Cir.1976); *Radke v. Union P.R. Co.*, 138 Colo. 189, 207, 334 P.2d 1077 (1959); *Mueller v. Keller*, 18 Ill.2d 334, 340–41, 164 N.E.2d 28 (1960); *Blue River Sawmills, Ltd. v. Gates*, 225 Or. 439, 474–75, 358 P.2d 239 (1960); and *Waterville Estates Ass'n v. Campton*, 122 N.H. 506, 509, 446 A.2d 1167 (1982). A contract concerning the use of real property is commonly referred to as a lease. *See, e.g., Goodman v. Jonas*, 142 Cal.App.2d 775, 790, 299 P.2d 424 (1956); *Dean v. Brower*, 119 Cal.App. 412, 416, 6 P.2d 580 (1931); and *Kendall v. Ernest Pestana, Inc.*, 40 Cal.3d 488, 500, 220 Cal. Rptr. 818, 709 P.2d 837 (1985). Distinguishing between a lease, an easement and a license concerning the use of real property can be complicated. Generally, courts look to the intent of the parties concerning the property to determine whether the agreement should be interpreted to create a lease, easement or license. *Robert's River Rides v. Steamboat Dev. Corp.*, 520 N.W.2d 294, 300 (Iowa 1994); *Bunn v. Offutt*, 216 Va. 681, 684–85, 222 S.E.2d 522 (1976). Even where a writing exists which categorizes the agreement concerning the property as either a lease, easement or license, that categorization will not control the determination, although the courts will consider the title and language of the document used in deciding the nature of the interest at stake. *Kapiolani Park Preservation Soc'y v. Honolulu*, 69 Haw. 569, 578, 751 P.2d 1022 (1988); *Cooper v. Boise Church of Christ*, 96 Idaho 45, 47, 524 P.2d 173 (1974); *BeWigged by Suzzi, Inc. v. Atlantic Dept. Stores, Inc.*, 49 Ohio App.2d 65, 70–72, 359 N.E.2d 721 (1976).

 Despite these distinctions, California treats enforcement of license terms similarly to contract provisions. *See, e.g., Northridge Hospital Foundation v. Pic 'N' Save No. 9, Inc.*, 187 Cal.App.3d 1088, 1095, 232 Cal.Rptr. 329 (1986); *Karbelnig v. Brothwell*, 244 Cal.App.2d 333, 338, 53 Cal.Rptr. 335 (1966); and *Dutra v. Cabral*, 80 Cal.App.2d 114, 120, 181 P.2d 26 (1947). A court may not refuse to honor a contract provision unless it is both procedurally and substantively [5] unconscionable. *Gutierrez v. Autowest, Inc.*, 114 Cal.App.4th 77, 87, 7 Cal.Rptr.3d 267, 275 (2003). The non-drafting party is not excused from any provision or condition of a contract merely because they did not read or understand the provision. *Id.* While SCE is not barred from raising equitable defenses to those provisions or conditions of the licenses which it feels are unjust,[6] SCE cannot

---

**5.** Substantive unconscionability of a contract provision focuses on whether it is overly harsh, unduly oppressive, or so one-sided as to fall outside the reasonable expectations of the non-drafting party. *Gutierrez v. Autowest, Inc.*, 114 Cal.App.4th 77, 87, 7 Cal.Rptr.3d 267, 275 (2003). Procedural unconscionability of a contract provision focuses on the manner in which the contract was negotiated and the relative circumstances of the parties. *O'Hare v. Municipal Resource Consultants*,

107 Cal.App.4th 267, 132 Cal.Rptr.2d 116 (2003).

**6.** Upon presentation of supporting evidence, Defendants may well argue that the terms of the FERC license are unconscionable, that they lacked negotiation and meaningful choice, or that the provisions of the license unreasonably reallocates the expected risks. *See, e.g., Jones v. Wells Fargo Bank*, 112 Cal. App.4th 1527, 5 Cal.Rptr.3d 835 (2003), *Sehulster Tunnels/Pre–Con v. Traylor Brothers,*

establish at this preliminary stage, that they are relieved from any of the contract provisions as a matter of law.

 Because Plaintiff's may establish that SCE's conduct constituted common law negligence,[7] trespass[8] or breach of contract (license conditions) under California law SCE's motion to dismiss for failure to state a claim upon which relief can be granted is DENIED.

### iii. Exculpatory, Indemnification and other Risk–Shifting Contract Clauses are Enforceable in California

 The issue of the validity of risk shifting clauses is discussed in *Southern California Edison v. United States*, 415 F.2d 758 (9th Cir.1969). On SCE's appeal from summary judgment for the United States awarding damages under a damages clause contained in a Special Use Permit, where SCE argued that the subject damages clauses "should be strictly construed against the United States, and that as so construed it should not be read as imposing liability without fault;" *Id.* at 759, the Ninth Circuit rejected this Defendant's argument, finding that the damages clause which read The permittees shall pay the United States for any damage resulting from this use, "clearly and unambiguously" imposed liability on the Defendant regardless of fault. *Id.* Defendant cites *South Carolina Public Service Authority v. Federal Energy Regulatory Commission*, 850 F.2d 788 (D.C.Cir.1988) for the proposition that such damages clauses themselves are unenforceable. However, *South Carolina* is factually distinguishable. There, the dispute was over the validity of a new condition FERC tried to impose upon the plaintiff's relicensing. The licensee objected to the proposed condition and the Appeals Court determined that FERC did not have authority to displace existing state law, which had contradictory provisions that limited such liability. California courts recognize parties' rights to impose indemnity obligations regardless of fault. The damages clauses here do not displace any state law of California, but rather are consistent with the principle that the burden of loss can be shifted, regardless of fault. *South Carolina* is further distinguished by the nature of the liability FERC sought to impose: unconditional liability for all property damages resulting from an earthquake disaster. Here, the FERC licenses only shift loss to SCE for any damages caused by SCE's projects themselves. Such a burden-shifting agreement is the price for the benefit of constructing a utility plant and operating on federal land.

 "[I]ndemnity...[is] 'the obligation resting on one party to make good a loss or damage another has incurred.'"[9]

---

Inc./Obayashi Corp., 111 Cal.App.4th 1328, 4 Cal.Rptr.3d 655 (2003), *Jaramillo v. JH Real Estate Partners, Inc.*, 111 Cal.App.4th 394, 3 Cal.Rptr.3d 525 (2003), and *Fischer v. First International Bank*, 109 Cal.App.4th 1433, 1 Cal.Rptr.3d 162 (2003).

7. Any person who allows a fire burning on his property to escape to the property of another without exercising due diligence to control the fire is liable to the owner of the property for the damages caused by the fire. *See* Cal. Health & Safety Code § 13008.

8. *Elton v. Anheuser–Busch Beverage Group, Inc.*, 50 Cal.App.4th 1301, 58 Cal.Rptr.2d 303

(1996) (a fire that spreads to another's property may constitute negligence or even trespass).

9. "[T]he general rules for construing indemnity provisions apply to exculpatory clauses as well." *Rooz v. Kimmel*, 55 Cal.App.4th 573, 582, 64 Cal.Rptr.2d 177 (Cal.App.1997); *see also Ferrell v. Southern Nevada Off–Road Enthusiasts, Ltd.*, 147 Cal.App.3d 309, 318–319, 195 Cal.Rptr. 90 (Cal.App.1983) (applying cases interpreting indemnification agreements to a release of liability contract); *Philippine Airlines, Inc. v. McDonnell Douglas Corp.*, 189 Cal.App.3d 234, 238, 234 Cal.Rptr. 423 (Cal.App.1987); *Salton Bay Marina, Inc.*

*Bay Development Ltd. v. Superior Court (Home Capital Corp.)*, 50 Cal.3d 1012, 269 Cal.Rptr. 720, 791 P.2d 290, 299–300 (1990) (quoting *E.L. White v. City of Huntington Beach*, 21 Cal.3d 497, 506–507, 146 Cal. Rptr. 614, 579 P.2d 505 (1978)); *see also Rooz v. Kimmel*, 55 Cal.App.4th 573, 582, 64 Cal.Rptr.2d 177 (Cal.App.1997) (quoting *Maryland Casualty Co. v. Bailey & Sons, Inc.*, 35 Cal.App.4th 856, 864, 41 Cal. Rptr.2d 519 (Cal.App.1995) (finding indemnity "the obligation resting on one party to make good a loss or damage another party has incurred")); *Schackman v. Universal Pictures Co.*, 255 Cal.App.2d 857, 859–60, 63 Cal.Rptr. 607 (1967) (recognizing indemnity where appellant had to indemnify appellee for damages proximately caused by the combined negligence of both parties). Indemnity has as its goal, a fair allocation of the ultimate burden of a tort recovery among those legally responsible. Indemnity may provide for the total indemnity and complete shift of liability from the indemnitee to the indemnitor. *See id.* at 300 (finding that when parties have not entered into an express indemnification agreement specifying that one party will bear all of the liability for a loss and where both parties may be partially responsible, comparative indemnity principles shall govern). A leading legal scholar and jurist observed:

"indemnity is only an extreme form of contribution." Indemnity allows one who has discharged a common obligation to recover the entire amount he has paid from the party primarily liable. In contrast to contribution, it provides for shifting the *total* burden from one party to another. Indemnity can be conveniently broken down into three general categories: Express contractual indemnity, implied contractual indemnity (implied-in-fact indemnity), and non-

*v. Imperial Irrigation Dist.*, 172 Cal.App. 3d

contractual indemnity (implied-in-law indemnity).

Judge Learned Hand's Comment, Contribution and Indemnity in California, 57 Calif. L.Rev. 490, 491–92 (1969) (footnotes omitted and quoting *Slattery v. Marra Bros.*, 186 F.2d 134, 138 (2nd Cir.1951) (emphasis added)).

■ California law recognizes "two general sources" from which a valid indemnification duty may arise. *Bay Development Ltd.*, 269 Cal.Rptr. 720, 791 P.2d at 299–300. "First, it may arise by virtue of express contractual language establishing a duty in one party to save another harmless upon the occurrence of specified circumstances. Second, it may find its source in equitable considerations brought into play either by contractual language not specifically dealing with indemnification or by the equities of the particular case." *Id.* (quoting *E.L. White*, 21 Cal.3d 497, 506–507, 146 Cal.Rptr. 614, 579 P.2d 505). Although there is "a distinction between an indemnity claim based on an express contract to indemnify, that is, an express contractual indemnity claim, and an indemnity claim based on 'contractual language not specifically dealing with indemnification,'" both are valid forms of indemnity recognized under California law. *Id.* (*E.L. White, supra,* 21 Cal.3d at 507, 146 Cal.Rptr. 614, 579 P.2d 505). "[P]arties to an express indemnity provision may, by the use of sufficiently specific language, establish a duty in the indemnitor to save the indemnitee [ ] from the results of even active negligence on the part of the latter." *Plant Insulation Co. v. Fibreboard Corp.*, 224 Cal.App.3d 781, 274 Cal.Rptr. 147, 152–53 (1990) (quoting *Bay Development Ltd.*, 269 Cal.Rptr. 720, 791 P.2d at 299–300). "[P]arties remain free to enter into contractual agreements providing for total indemnity . . . [as long

914, 932–933 n. 3, 218 Cal.Rptr. 839 (1985).

as] the contractual language is sufficiently specific to alert the potential indemnitor to the full scope of its obligation." *Id.* at 153.

Defendant cites *South Carolina Public Service Authority v. Federal Energy Regulatory Commission,* 850 F.2d 788 (D.C.Cir.1988) for the proposition that the damages clauses in FERC licenses are unenforceable. *South Carolina*'s facts are distinguishable and it is not controlling authority in this circuit. *South Carolina* decided a dispute about the validity of new condition which FERC tried to impose upon the plaintiff's re-licensing. The licensee objected to the proposed condition and the Court of Appeals determined that FERC did not have authority to displace existing state law with contradictory provisions with regard to liability. To the contrary, California courts recognize parties' rights to impose contractual obligations to indemnify regardless of fault. The damages clauses here do not displace or conflict with any state law of California but rather may be found to have validly shifted the burden of loss, regardless of fault, to SCE. *South Carolina* is further distinguishable by the nature of the risk shifted, all property damages resulting from an earthquake disaster. The damages clauses here simply impose the loss on SCE, rather than the United States, for damages caused by SCE's projects. Such risk shifting clauses are enforceable and serve the statutory purpose of not imposing loss on the public.

### F. DEFENDANT'S ELECTRIC POWER PLANT IS A "DEVICE WHICH MAY KINDLE A FIRE" UNDER CAL.PUB.RES. CODE § 4435

■ Plaintiff claims that Defendant's hydro-electric utility plant is a "device kindling a fire" under Cal.Pub.Res.Code § 4435. If a device is found to fall within the ambit of § 4435, the fact that a fire occurs is prima facie evidence of negligence. Cal.Pub.Res.Code § 4435 provides:

> If any fire originates from the operation or use of any engine, machine, barbecue, incinerator, railroad rolling stock, chimney, or any other device which may kindle a fire, the occurrence of the fire is prima facie evidence of negligence in the maintenance, operation, or use of such engine, machine, barbecue, incinerator, railroad rolling stock, chimney, or other device. If such fire escapes from the place where it originated and it can be determined which person's negligence caused such fire, such person is guilty of a misdemeanor.

Cal.Pub.Res.Code § 4435.

Since its enactment, only one case has interpreted what constitutes a "device capable of kindling a fire" under § 4435 for which the mere occurrence of a fire will establish prima facie evidence of negligence. *People v. Southern Pacific Company,* 139 Cal.App.3d 627, 633, 188 Cal. Rptr. 913 (1983). Southern Pacific recognized the probable intent of legislature in enacting § 4435 was to make it more difficult for "persons who operate or use machinery having an inherent tendency to create fires" to escape liability for their negligence by shifting the burden of proof. *Id.* Interpreting what might constitute a "device which may kindle a fire" to include the operation or use of a train, *Southern Pacific* found that the jury was properly instructed as to the burden shifting application of Cal.Pub.Res.Code § 4435. *Id.* at 632–33, 188 Cal.Rptr. 913. In accordance with the only precedent interpreting the scope of § 4435 to qualify a train as a "device which may kindle a fire," the logical conclusion is that a hydroelectric power plant, as a complicated combination of machinery which consistently produces high voltage electricity (an easily recognized impetus for fire), must also constitute a "de-

vice which may kindle a fire." Defendant's motion to dismiss Plaintiff's claim that Cal. Pub.Res.Code § 4435 applies to shift the burden of proof is DENIED.

### G. THE OPERATION OF A POWER PLANT IS NOT AN ULTRAHAZARDOUS ACTIVITY

 "The doctrine of ultrahazardous activity provides that one who undertakes an ultrahazardous activity is liable to every person who is injured as a proximate result of that activity, regardless of the amount of care he uses." *Pierce v. Pacific Gas & Electric Co.*, 166 Cal.App.3d 68, 85, 212 Cal.Rptr. 283 (Cal.App.1985) (citing *McKenzie v. Pacific Gas & Elec. Co.* (1962) 200 Cal.App.2d 731, 736, 19 Cal.Rptr. 628 (1962)). 3096–3104. The doctrine "focuses not on a product and its defects but upon an activity intentionally undertaken by the defendant, which by its nature is very dangerous." *Id.* "[T]he doctrine scrutinizes not the accident itself but the activity which led up to the accident." *Id.*

 Six factors apply to determine whether an activity should be classified as ultrahazardous:

[1] "existence of a high degree of risk of some harm to the person, land or chattels of others;

[2] likelihood that the harm that results from it will be great;

[3] inability to eliminate the risk by the exercise of reasonable care;

[4] extent to which the activity is not a matter of common usage;

[5] inappropriateness of the activity to the place where it is carried on; and

[6] extent to which its value to the community is outweighed by its dangerous attributes."

*Edwards v. Post Transportation Co.*, 228 Cal.App.3d 980, 984, 279 Cal.Rptr. 231 (1991). "[T]he several factors are to be considered together; establishment of one factor alone is usually not sufficient to categorize an activity; several factors will ordinarily be required." *Id.*

The California Supreme Court "has limited the doctrine of ultrahazardous activity to encompass only activities which are neither commonplace nor customary." *Pierce*, 166 Cal.App.3d at 85, 212 Cal.Rptr. 283 (citation omitted) (finding public utility's maintenance of high-voltage power systems is not an ultrahazardous activity); *see also Clark v. Di Prima*, 241 Cal.App.2d 823, 51 Cal.Rptr. 49 (1966) (finding water escaping irrigation ditch was not an ultrahazardous activity as ditches are now in widespread use).

 Under California law, the activities of power plants are not classified as ultrahazardous for the purposes of the strict liability doctrine. The allegation SCE's hydroelectric utility plant is an ultrahazardous activity conflicts with California law and is not supported by existing federal statutory or decisional law. SCE's motion to dismiss Plaintiff's claims for strict liability under the doctrine of ultrahazardous activity is GRANTED WITH LEAVE TO AMEND, if Plaintiff can in good faith allege facts that state a claim.

### H. ATTORNEYS' FEES UNDER 13 U.S.C. §§ 13009, 13009.1 AND 31 U.S.C. 3717

 Neither 13 U.S.C. §§ 13009 nor 13009.1 provides for recovery of attorneys' fees. *See Dept. Of Forestry and Fire Protection v. LeBrock*, 96 Cal.App.4th 1137, 117 Cal.Rptr.2d 790 (2002). Title 31 U.S.C. § 3717 is unclear as to whether attorneys fees are recoverable as "costs" associated with "handling a delinquent claim." *See U.S. v. Hyundai*, 172 F.3d 1187, *U.S. v. Spann*, 797 F.Supp. 980 (S.D.Fla.1992) (declining to rule because attorneys' fees were recoverable otherwise

under different statutes). *U.S. v. Burns,* 1992 WL 247438 (S.D. Fla. 1992). To the extent Plaintiffs could prove that SCE lacked a good faith basis for denying payment on any "claims," the clear language of the statute seems to indicate that the United States is not only permitted, but required to assess the costs of attorneys fees under 31 U.S.C. § 3717 in its collection efforts. "The head of an executive, judicial, or legislative agency *shall* assess on a claim owed by a person(1) a charge to cover the cost of processing and handling a delinquent claim." 31 U.S.C. § 3717(e). The issue of whether a breach of contract suit constitutes a "delinquent claim" is not.

Assuming attorneys' fees are recoverable as "costs" under Title 31 U.S.C. § 3717(e), subsection (g)(2) prohibits Plaintiffs from seeking such "costs" associated with any of their claims arising out of the 2175 Project License, the 67 Project License, the Memorandum of Understanding, or the Special Use Permit, as the "costs" provision of 31 U.S.C. § 3717(e) does not apply "to a claim under a contract executed before October 25, 1982, that is in effect on October 25, 1982." 31 U.S.C. § 3717(g)(2). *See* Complaint at 5:11–13 (acknowledging 2175 Project License was issued on or about March 27, 1959), at 7:11–13 (acknowledging 67 Project License renewal was issued on August 9, 1978), at 10:17–19 (acknowledging Memorandum of Understanding was entered into on or about April 16, 1971), and at 12:6–8 (acknowledging Special Use Permit issued on or about December 28, 1949). While motions to strike are disfavored and infrequently granted, Plaintiffs have not provided unambiguous authority to support their claims for attorneys' fees under 31 U.S.C. § 3717. *See Pease & Curren Refining, Inc. v. Spectrolab, Inc.,* 744 F.Supp. 945, 947 (C.D.Cal.1990), *abrogated on other grounds by Stanton Road Associates v. Lohrey Enters.,* 984 F.2d 1015 (9th Cir. 1993).

As none of Plaintiff's remaining claims provide a basis for the application of 31 U.S.C. § 3717(e), Plaintiffs fail to set forth a basis upon which attorneys' fees are recoverable thereunder. Defendant's motion to strike Plaintiff's claims for attorneys' fees under 31 U.S.C. § 3717, 13 U.S.C. §§ 13009 and 13009.1 is GRANTED WITH LEAVE TO AMEND.

## V. *CONCLUSION*

Based on the foregoing IT IS ORDERED:

(1) Defendant's request for judicial notice is GRANTED as to the existence and authenticity of public records (Exhibits A, B and D of Defendant's Request), DENIED as to any and all disputed facts or law contained therein, and DENIED as to any non-public records or otherwise self-proving exhibits (Exhibits C and E to Defendant's Request);

(2) Defendant's motion to dismiss Plaintiff's claims arising out of the 2175 Project License and the 67 Project License on the basis that Plaintiff lacks standing to sue is DENIED;

(3) Defendant's motion to dismiss Plaintiff's claims regarding the FERC license conditions is DENIED;

(4) Defendant's motion to dismiss Plaintiff's claims under the doctrine of strict liability for ultrahazardous activity is GRANTED WITH LEAVE TO AMEND;

(5) Defendant's motion to dismiss Plaintiff's claims that Defendant's hydroelectric plant is a device which subjects Defendant to Cal.Pub.Res. § 4435 burden-shifting provision is DENIED;

(6) Defendant's motion to dismiss Plaintiff's claim that Defendant's hydroelectric plant is an ultrahazardous activity is GRANTED WITH LEAVE TO AMEND; and

(7) Defendant's motion to strike Plaintiff's claims for attorneys' fees under 13 U.S.C. §§ 13009, 13009.1 or 31 U.S.C. § 3717 is GRANTED WITH LEAVE TO AMEND.

Any amended complaint shall be filed within twenty (20) days following date of service of this decision by the courtroom deputy clerk. SO ORDERED.